BEACH and others, *appellants*, and THE PRESIDENT, &c. of the FULTON BANK, *respondents*.

The *re-examination* of a witness in chancery rests in discretion, and though granted under peculiar circumstances, is against the ordinary practice of that court.

Where *usury* is pleaded in an answer in chancery, and the facts and circumstances constituting it specially set forth, evidence proving a usurious contract different from that alleged in the answer is inadmissible.

*Usury* is a good defence in equity as well as at law, whether put forward by way of answer or plea. If the usury be *proved*, the defendant will succeed, but if he cannot succeed without invoking the exercise of the equitable powers of the court, the aid of the court will not be granted unless he does equity.

Where, therefore, an application was made to open the proofs in a cause in chancery for the purpose of *re-examining* a witness, and to *amend an answer* so as to embrace an usurious contract to which it was expected the witness would testify on his re-examination, which contract was not set forth in the answer originally put in, *it was held* that the defendant was not entitled to

ALBANY.
Dec. 1829.

Beach
v.
Fulton Bank.

succeed in his applications, unless he paid or offered to pay the money actually lent, with the legal interest thereof.

*Amendments* will not be granted to enable a party to set up the defence of *usury* or of the *statute of limitations*, if he has not availed himself of the opportunity to interpose such defence in the first instance. *It seems*, however, that where such defences are *defectively* set forth, an amendment will be allowed to give the party the benefit of the defence which he *intended* to present, but he will not be permitted to put in a *new* or *additional* plea or answer.

*Trustees*, under a deed of assignment for the benefit of creditors, may set up the defence of *usury ;* thought, *it seems*, they are not *bound* to do so.

A *contract* for the loan of money made with an *incorporated company*, as well as *the security* taken on such loan, is void, if the power to loan money is not expressly given, or necessarily incident to the powers granted to such company by its charter.

APPEAL from chancery. The respondents being the hold-ers of a promissory note for $15,000, made by the appellants payable to *Keeler* and *Rogers*, a mercantile firm in the city of New-York, and negotiated by them, filed their bill to en-force the trusts contained in certain deeds of assignment ex-ecuted by Keeler and Rogers to the appellants. The appel-lants, for the accommodation of Keeler and Rogers, and to enable them to continue their commercial operations, on the 22d October, 1825, made and signed four promissory notes, one for $5000, a second for $10,000, a third for $15,000, and a fourth for 20,000, payable twelve months after date ; and to secure the appellants against loss or damage by reason of so doing, Keeler and Rogers on the same day executed to them a deed of assignment of a large amount of property *in trust* to apply the proceeds to the payment of the notes thus made by the appellants. The note for $15,000 was ne-gotiated by Keeler and Rogers to the Hudson Insurance Com-pany of the city of New-York, from whom it passed to the respondents. On the 29th October, 1825, Keeler and Rogers stopped payment, and on the same day executed a further as-signment to the appellants of other and further property, in trust for the payment of the said notes and of other debts of Keeler and Rogers. The bill averred that funds to a large amount had come to the hands of the appellants, that they refused to pay the respondents any part thereof and concluded by praying an account, &c.

The appellants, in their answer, admitted the trusts charged in the bill, and the receipt of funds sufficient, or nearly so, to pay and discharge the note in question, but insisted upon the benefit of the statute against usury, alleging that the note had been passed under a usurious contract by Keeler and Rogers to the Hudson Insurance Company, setting forth the contract particularly, and that the Hudson Insurance Company, after becoming possessed of the note, transferred it to the respondents.

Proofs were taken in the cause. James Keeler, a member of the firm of Keeler and Rogers, in his testimony, supported the defence of usury as alleged in the answer. Mark Spencer, with whom, in the character of President of the Hudson Insurance Company, the negotiation respecting the loan of the money was had, on the contrary, proved it to be a legal transaction. In July, 1828, the proofs in the cause were closed.

In February, 1829, a petition was presented to the chancellor, praying that the proofs might be opened for the purpose of *re-examining Mark Spencer.* In this petition it was stated that in a suit at law tried in December, 1828, which suit was brought for the recovery of the $5000 note, given at the same time with the note in question, Mark Spencer was examined as a witness, and that the facts to which he then testified, relating to the negotiation as well of the note in question in this suit as of the $5000 note, proved that the contract entered into between him and Keeler in relation to the notes was usurious. The testimony of Spencer, as set forth in the petition, clearly proved the contract to have been usurious, but its terms were essentially and materially different from the usurious agreement set up in the answer of the appellants. A part of this testimony was, that Spencer, on receiving the two notes of $15,000 and $5000, advanced the sum of $14,000, and that it was agreed between him and Keeler, that if a negotiation then on foot to obtain $50,000 from the Fulton Bank on the notes of Keeler and Rogers, endorsed by the appellants, was completed, the sum so advanced by him was to be returned and the notes given up; otherwise, if that sum could not be raised, and Keeler and

ALBANY,
Dec. 1829.

Beach
v.
Fulton Bank.

Rogers stopped payment. then the notes were to be retained as security for the $14,000, and any other debt which Keeler and Rogers might then owe or thereafter owe to the Hudson Insurance Company. The chancellor decided against the petition, expressly on the ground that the appellants had not offered to pay the *money actually lent with legal interest,* ruling that a party who sets up the defence of usury and cannot sustain it without the aid of the court of chancery, must consent to do equity before the court will afford him any relief. In April, 1829, the appellants presented a petition to the chancellor for permission to amend their answer so as to set up the usury disclosed by the testimony of Mark Spencer, elicited on the trial of December, 1828, suggesting that otherwise they might not be able to avail themselves of the same, by reason of its not being fully set up in the answer already put in. The chancellor decided against this petition also. (For the opinions of the chancellor on both those applications, see 1 Paige's Ch. Rep. 429 and 431.) The defendants below appealed.

*S. A. Foot & A. Van Vechten,* for appellants. The power to grant a motion for the re-examination of a witness rests in sound discretion, and its exercise is governed by circumstances. (1 Johns. Ch. R. 483. 2 id. 432. 4 id. 649.) In the following analogous cases such motion prevailed: 1 Johns. Ch. R. 526; 1 id. 368; Finch's Prec. 493; Ambl. 585; 2 Vernon, 472; 1 Vesey, jun. 398; Dickens, 750; 2 P. Wms. 646; 13 Vesey, jun. 288; and in none of them did the court enquire what was the defence sought to be established by the proof. In the case cited by the chancellor where a condition was annexed to the opening of an order that a bill be taken *pro confesso,* a default had been incurred, and the party asked a favor; not so here, delay was not imputable to the appellants, and what they asked was not favor, but matter of right. Relief against usury is granted in chancery as well as against forgery, if the party can prove his case without calling for a discovery. (2 Vesey, sen. 246.) If discovery is asked, the party is bound to pay the sum lent and interest; otherwise not. (1 R. L. 66.) The rule laid down

by Chancellor Kent, in *Livingston* v. *Tompkins*, (4 Johns. Ch. R. 431,) that equity does not assist the recovery of a penalty or forfeiture of any thing in the nature of a forfeiture, applies only to cases where compensation can be made to the party without enforcing the penalty as in the cases collected in 1 Maddock, 37, 8. Chancellor Walworth in this case says, that if a party cannot avail himself of the defence of usury without the aid of a court of equity when he applies for equitable relief, he must consent to waive the forfeiture and pay or agree to pay the amount actually due ; and that the same rule prevails when the party applies for equitable relief to a court of law, citing 1 T. R. 153. The case in Term Reports stands alone, and has never since been recognized as law. It was one of the attempts of Lord Mansfield to assume equity jurisdiction ; at all events it does not relate to the subject of amendments. If the rule that the party must pay the amount actually due be correct as a general rule, it does not apply to a case like the present, where the appellants stand in the character of sureties and assignees, and were not parties to the usury nor violators of the law.

If it is objected that the answer is not broad enough to admit the evidence, the reply is, that the decision was not made by the chancellor 'on that ground ; and at all events if the evidence be material, it should be received and the pleadings may afterwards be amended so as to cover the proof. (2 Brown's Parl. Cas. 194. 4 id. 640.)

Leave to amend will be granted in *penal* actions, even after the time limited for bringing a new action. (7 T. R. 55. 1 Starkie, 400. 6 Taunton, 419. 17 Johns. R. 346.) So also in an action for *slander*. (1 Wendell, 93.) Courts of common law look into the nature of the defence only where the statute of limitations is sought to be pleaded. (1 Wendell, 302. 2 id. 294.) Where a plea was defective, though the defence was strictly and purely technical, an amendment was allowed. (6 Cowen, 606.)

The application was not for leave to plead usury, such plea had already been interposed ; it was to be allowed to have the benefit of testimony not known at the time the proofs were taken.

VOL. III.          73

It could not be required that the appellants should verify the evidence of the witness; this case necessarily forming an exception to the general rule.

There was no *contingency*, as to the re-payment of the loan to take the case out of the statute; a contingency to notorious bankrupts to repay $14,000 within a few days cannot be considered otherwise than a shift or device to evade the statute.

The note was not available in the hands of Keeler and Rogers, it had no legal existence until it was discounted; it was made for their accommodation, and could not have been enforced by them against the makers. Consequently it cannot be said that the contract with the Hudson Insurance Company was not usurious.

*J. Hoyt & D. B. Ogden*, for respondents. It is against the general practice of the court of chancery to re-examine a witness after the proofs have been closed; though it is sometimes done upon good cause shewn, under peculiar circumstances. (2 Johns. Ch. R. 432.) Courts of equity instead of relaxing, are tightening this rule. (2 Swanston, 401. 19 Vesey, 590. 5 Maddock's Ch. R. 56.)

The appellants are not entitled to re-examine the witness, not having stated under oath their belief in the facts sought to be obtained on the re-examination. This they were bound to have done, (1 P. Wms. 727; 3 id. 371; 13 Vesey, 511; 3 Atk. 35; 1 Johns. Ch. R. 49; 3 id. 395;) and still could not do, as the relation given by the witness of the contract for the loan varies from the account of the matter set forth in the answer. The appellants having attempted to impeach the witness Spencer, they should not be allowed to avail themselves of his testimony to support their defence, (2 Atk. 529,) nor be permitted to use him to impeach Keeler, their own witness.

The answer setting up usury, and the facts and circumstances constituting it being specially alleged and issue taken thereon, it is not competent to the appellants to introduce evidence of another and different state of facts to support the defence. The rules of pleading as to pleas in bar

in equity are the same as at law. (Beames, 163. 2 Chitty, 515. 1 Bos. & Pul. 144. 3 Mod. 35. Comyn's Dig. Pleader, 2, w. 23. Ord on Usury, 92. 2 Show. 329. 12 Mod. 385. 3 T. R. 538, 351. 2 Maule & Selw. 377. Cowp. 671. 3 Atk. 589. 6 Vesey, 594. 1 Ball & Beatty, 324. 6 Johns. R. 543. 14 id. 42. 1 Cowen, 734. 4 Johns. Ch. R. 332. 12 Vesey, 477. 3 Swanston, 472.)

There was no usury in the transaction as testified to by Spencer at the trial in December, 1828 ; the payment of extra interest depended upon a contingency. Where the principal is to be re-paid on a contingency, and not at all events, the contract is not usurious. (1 Cowper, 112. Cro. Jac. 509. 1 Atk. 342, 450. Comyn on usury, 73, 74, 159. 3 Bos. & Pul. 154. 3 Atk. 520. 2 Rolle, 469. 5 Co. 70. 1 P. Wms. 653. Plowdon on Usury, 182. 1 Hawkins P. C. ch. 8, § 19. Cooper, 204. 1 Johns. Ch. R. 367, 439. 1 Peters' U. S. R. 232.) Besides the note was available in the hands of Keeler and Rogers, and might have been enforced against the appellants who had received a full consideration for it. (15 Johns. R. 55.)

The appellants being trustees with funds in hand are bound to pay over the same, according to the terms of the deed of trust, and it is not competent to them to set up the defence of usury ; nor is it in the power of the assignors to recall the trust or destroy rights vested under the assignment. (1 Bos. & Pul. 3, 295. 2 Wilson, 309. 2 Burr. 2069. 10 Wheaton, 393. 1 Johns. C. 158.)

A court of appeal will not interfere to regulate the practice or discretion of an inferior court, except in *extreme* cases. (1 Peters' U. S. R. 168.) This is not such a case. The application was addressed to the discretion, to the favor of the court. At law, judges enforce the statute with regret against *bona fide* holders of paper tainted with usury ; in equity, in the exercise of a sound discretion, an application of this kind therefore may well be refused. The legislature in their late revision of the laws, (1 R. S. 772, § 5,) exempt *bona fide* holders of negotiable paper from the operation of the statute, and virtually say it is inequitable and unconscion-

ALBANY,
Dec. 1829.
~~~~~~
Beach
v.
Fulton Bank.

able to enforce the statute against them ; and will not a court of equity say so, when it is in their power to protect parties against such a defence ?

The following opinions were pronounced :

By Chief Justice SAVAGE. 1. As to the ordinary practice of the court upon a motion for the *re-examination* of a witness, several cases are found both in our own and in the English Books. In the case of *The Trustees of Kingston* v. *Tappen*, (1 Johns. Ch. R. 368,) a witness was ordered to be re-examined after publication passed, upon an affidavit of the *witness* that his testimony was materially mistaken. The chancellor remarked there was no suggestion of tampering with the witness. He cited 2 P. Wms. 647, where Lord Chancellor King is reported to have said, that when it appears to the court that either the *examiner* is mistaken in taking the deposition, or the *witness* in making it, he thought it for the advancement of truth and justice that the mistake should be amended. A similar decision was made in *Denton* v. *Jackson*, (1 Johns. Ch. R. 526.) In *Smith* v. *Brush*, (1 Johns. Ch. R. 456, 60,) a motion to open the rule for publication on an affidavit stating the discovery of a witness to a point material was denied. The cause had been some time pending, and publication had passed six months before the motion. The motion was denied principally on the ground that the testimony, if admitted, would not alone entitle the plaintiff to a recovery, against the defendant's answer which required two witnesses, or one witness and circumstances to destroy it.

In *Boyd* v. *Dunlap*, (1 Johns. Ch. R. 484,) the general proposition is laid down, that liberty to re-examine witnesses rests in discretion, and is to be governed by circumstances ; and a dictum of Lord Hardwicke is referred to in 2 Ves. 270, where he says, if a witness is once examined, it might be dangerous, without an order, to let him be examined again ; the danger alluded to is that of drawing in a witness when it is known what he has already sworn to. In *Hammersly* v. *Lambert*, (2 Johns. Ch. R. 432,) the chancellor discussing this question of practice at considerable length, says, that without good cause shewn, and a sufficient excuse

ALBANY,
Dec. 1829.

Beach
v.
Fulton Bank.

for the delay, witnesses should not be examined after publication passed. The rule, he observes, is founded in wisdom, and was intended to guard against mischiefs which would result from holding out an opportunity to supply defects by fabricated evidence; and that such examination ought not to be permitted but upon special and satisfactory reasons, both for the previous neglect and the the further examination. In this case, the chancellor reviews the English cases, and shews that the proposition he had laid down is in accordance with them: he admits there may be exceptions.

In the case of *Hallock* v. *Smith*, (4 Johns. Ch. R. 650,) another motion was made for the re-examination of witnesses on the alleged ground of the insufficiency of their answers to some of the interrogatories. This motion was denied, the chancellor saying that the re-examination of witnesses was not to be granted but upon special application, and rested in the discretion of the court, and that the case did not require such re-examination. In the case of *Kirk* v. *Kirk*, (13 Ves. jun. 280 and 285,) the court directed a re-examination in one case before publication and in another after: both applications were made at the instance of the witnesses to correct mistakes. In *Vaughan* v. *Worrall*, (2 Swanston, 397, 402,) the court refused to permit the re-examination of a witness who was interested when sworn, but had subsequently been released. In one of the cases referred to, Chancellor Kent assimilates the motion for re-examination to a motion for a new trial in a court of law on the ground of newly discovered testimony. It would, I apprehend, be difficult to find any case at law where a new trial has been granted upon grounds similar to those upon which the re-examination is asked for in this case.

Assuming, then, that the practice of the court of chancery is against the present motion, it may be proper to enquire whether the peculiar circumstances of this case require the exercise of the extraordinary powers of the court; and 1. Is the testimony material? does it establish usury? After the able and satisfactory manner in which this question is discussed in the opinion of Judge Oakley of the superior court, read to us as the argument of counsel, I need only say, that the

note in question was an accommodation note, made expressly for the purpose of raising money for Keeler and Rogers and Keeler and Mather, and not intended to be paid by the makers. It was said by counsel that it was not intended that the notes should be paid by Keeler and Rogers, because they assigned to the defendants all their property, the fund out of which payment was to be made. This is true, and the defendants as trustees and assignees, were expected to pay these notes; but the true criterion is, were the makers liable to be sued on these notes while in the hands of Keeler and Rogers? I think most clearly they were not. It makes no difference that some of the makers are assignees: their liability must exist as makers before negotiation if the notes were perfect and available. Suppose an accommodation maker or endorser of a promissory note takes a judgment, mortgage or agreement to indemnify him for the use of his name, does that make the note upon which he puts his name an available instrument before negotiation? and can he to whom the credit of his friend has been loaned turn round and sue his friend upon a note created for his accommodation? It will hardly be pretended. The notes, therefore, I consider accommodation paper, and if they were discounted by the Hudson Ins. Co. in the manner stated, to wit, that notes for $20,000 were received, for which $14,000 in cash were given, and the other $6,000 paid in bonds of the company which were below par, but received at par; that insurance at 6 per cent. was paid on a life insurance which was never effected; that 6 per cent. discount and 6 per cent. called insurance, but properly usury, was paid, and say 3 per cent. loss on bonds incurred, in all 15 per cent.; can it be considered a grave question whether this transaction was usurious? It is said however that there was a *contingency* in this loan; if so, it at most extended to the $14,000, and the two sums of $3,000 each were palpably usurious; and when the contingency was agreed on, it must have been known to Mr. Spencer that that contingency was extremely remote, so much so as to justify the belief that it was merely a shift to evade the statute.

These notes were discounted also most palpably in violation of the restraining act and the act incorporating the Hud-

son Insurance company, and were therefore void. That point perhaps should not now be discussed, as that ground is not relied on in the answer; but I wish to correct an impression which I perceive has been made upon the minds of some of the profession. I wish to do this because possibly the erroneous impression may have arisen from a want of sufficient precision on the part of the court, or from the marginal note of the reporter, which is broader than the text will warrant. It is said that though the notes were void, being discounted in violation of the restraining act, yet the contract of loan is valid, and the money may be collected of the borrower. That has been said in two cases only: in *The Utica Ins. Co. v. Scott*, (19 Johns. R. 1,) and in the suit of the same plaintiffs against Kipp, (8 Cowen, 20.) If those cases are critically examined, it will be seen that the right of the plaintiffs in those cases to recover is placed upon *the power given them by the charter to loan money*. The Hudson Insurance Company has no such power, and therefore the contract of loan is void as well as the security, and for the same reason, viz. the want of capacity to make such contract either by parol or by taking a note. In the case of the note, there is the additional reason that the statute expressly declares it void. If the company have no capacity to make such contract, they have not the power to enforce it. The Utica Insurance Company have the power given them to invest their surplus funds, which the court, (19 Johns. 384, 5,) say gives them power to loan money in any manner not prohibited by law. They have power therefore to loan money, though not to discount notes. Hence a note discounted by them is void, but the contract of loan may be enforced against the borrower. Although, therefore, the contract of loan is valid where such contract is not prohibited by law, and the security only is rendered void by statute, still the contract of loan must have competent parties capable by law to make the contract; and incorporated companies having no powers but such as are granted or necessarily incident, a company having no such power, express or implied, has no capacity to lend money, of course cannot sue for it.

Another ground assumed in support of the decree of his honor the chancellor is, that the testimony sought to be introduced is inadmissible under the answer. The defendants seem to have some doubts on that question, and therefore have moved for leave to amend their answer. There can be no doubt that the defendants are bound to defend themselves on the ground assumed in the answer, and no other. (12 Ves. 480. 11 id. 240. 6 Johns. R. 565.) The defendants have pleaded usury in a particular manner, and have proved it as laid in their answer, and now seek to prove it in another manner. The difference, it is said, is not material, as the $6000, according to Keeler, was to have been paid in bonds; and according to Spencer, $3000 had already been paid in that manner, and $3000 more were subsequently paid in the same manner, on the 28th October; both of which sums were secured by the note in question. In my opinion, however, they are separate transactions, according to the different relations of them, and sufficiently so to constitute distinct and separate contracts, and one could not be given in evidence to support a pleading setting forth the other.

Another ground assumed by the counsel is, that the defendants being trustees and admitting that they have funds in hand sufficient to pay the note, cannot set up this defence. This ground is certainly not tenable. The defendants are some of them the original *debtors*, and some are *creditors* as well as *makers* of these notes, and also trustees. As trustees, they are to pay other creditors, and ought not to pay any illegal demands; perhaps they would not be bound to set up this defence, but there can be no doubt they are not bound by their obligation as trustees to pay notes which have no legal efficacy, and are perfectly justified in availing themselves of such a defence, as if they were individually interested.

The ground upon which the chancellor has placed his decision seems to me perfectly correct. His proposition is, that whoever seeks the aid of the equitable powers of the court must do equity; that the defendants, like any other defendants, may rely upon usury, either by way of answer or plea, and prove the usury. If they succeed in their proof, the plaintiffs must fail; but if they cannot succeed without call-

ing upon the court for the exercise of its equitable powers, the court will refuse its aid unless those who ask for equity are willing to do equity. This is certainly equitable. On the other hand, it is contended that this rule is not applicable unless a discovery is sought from the party who is to forfeit his debt by disclosures which he is compelled to make. In the case of *Fanning* v. *Dunham*, (5 Johns. Ch. Rep. 142,) Chancellor Kent lays down the general proposition as above and remarks, " It is perfectly immaterial, in respect to the application of the principle to the case of the debtor, who sues here, whether the usury be confessed by the defendant in his answer, or made out by proof. The plaintiff must still consent to do what is just and equitable on his part, or the court will not assist him, but leave him to make his defence at law as well as he can." In that case the plaintiff in chancery was the debtor, and was calling for the aid of equity to relieve him from an usurious contract. Here the parties making the same call are the defendants in the suit, and it seems to me they should receive the same answer. (2 Vern. 170, 173.) The same principle was applied in a court of law, in *Fitzroy* v. *Gwillin*, (1 T. R. 153.)

It is known to every lawyer that there are certain defences which are legal, but which are not encouraged, and are sometimes called unconscionable. Thus in a loan of money where there is an excess of interest, however small the excess contracted for may be over the legal rate of interest, it is usury, which avoids the security, and the creditor loses his whole demand. So where an indulgent creditor permits the statute of limitations to attach, the presumption of law is, that the debt is paid, though the fact generally is otherwise. When defences of this nature are interposed; and when the court must see and know that the defendant is seeking to avoid the payment of an honest debt, they will require him to bring himself within the practice of the court in the first instance, and if he makes a slip, they will not treat him with that indulgence which is freely extended to others. Hence in a court of law, the defendant who is bound to plead usury, is also bound to prove it as pleaded, and courts of law are cautious how they grant leave to

ALBANY,
Dec. 1829.

Beach
v.
Fulton Bank.

Beach
v.
Fulton Bank.

amend to enable a party to sustain an unconscionable defence, or to aid him in a penal action.

In the case of *Jackson* v. *Murray*, (1 Cowen 158,) we refused leave to amend where the statute of limitation had attached, because the amendment would enable the plaintiff to evade the statute which had been passed for quieting titles in a certain section of the state. It would have enabled the plaintiff substantially to bring a new suit after the time limited by the legislature ; this the court had no right to do, as it would have been virtually dispensing with the statute. But I cannot see that there is any discrepancy, as was suggested on the argument, between that case and those which require a defendant to plead the statute of limitations in the first instance, if he intends to rely on it. In the case of *The Utica Insurance Company* v. *Scott*, (6 Cowen, 606,) in granting the amendment, it was expressly declared, that the defendants should not plead a new unconscionable defence. It was said that the plea permitted to be amended was of the same character ; but in that case the supreme court felt constrained to consider the case as if the demurrer had in the first instance been correctly decided in that court, where the judgment would have been for the plaintiffs with leave to the defendant to amend. That amendment extended to the same plea. The defendant had a right to draw a good plea to embrace the defence originally intended. So in the case under consideration, had the answer been adjudged defective in not presenting the defence which the defendants intended to present, I should be of opinion that they ought so to amend as to present the defence which they attempted unsuccessfully to rely upon. Such however is not their case. They ask to prove a defence which is distinct from that which they had presented, and which they had sworn they believed to be the true one. In *Hallagen* ads. *Golden*, (1 Wendell, 302,) the court refused liberty to the defendant to add a plea of the statute of limitations after issue joined, and though no reasons are given in the report, the reason assigned when the decision was made, was that given in 1 Archb. Pr. 124, which was also referred to ; that where leave is given to add a new plea, it will only be done under particular circumstances, and then the new plea must

go to the merits ; and therefore the court has refused to allow a defendant to add the plea of the statute of limitations. This plea, as was said in 2 Wils. 253, excludes the merits. In *Jackson* v. *Varick*, (2 Wendell, 294,) it was said the rule is uniform, if a party neglects to plead the statute of limitations he loses his plea. It is a strict defence, and if the party lets it slip, the court will not relieve him. Had the defendants in these two last cases pleaded the statute of limitations defectively, leave would probably have been given to amend according to the principle of the case of *The Utica Insurance Company* v. *Scott.* But none of these cases afford a precedent for admitting an *additional* plea or answer of a defence which is not to be favored.

On the whole, therefore, I am of opinion that the facts disclosed by the testimony of James Keeler shew an usurious loan ; and that the facts disclosed in the superior court of the city of New-York by Mark Spencer, also shew an usurious loan ; but that the answer put in by the defendants, though supported by the testimony of Keeler, is not sufficient to admit evidence such as that given by Spencer in the superior court ; and that therefore the chancellor in the exercise of a sound legal discretion decided correctly in refusing leave to re-examine Mark Spencer, as well for the reasons above assigned, as for the reason assigned by the chancellor, that a party asking the equitable interference of a court of equity, to enable him to set up the defence of usury, must first consent to do equity by offering to pay the money actually borrowed with interest.

The same objections exist to the application for leave to amend the answer ; both applications must be governed by the same principles, and should receive a similar decision.

I am therefore of opinion that the several orders of the chancellor appealed from in this case should be affirmed.

Justices SUTHERLAND and MARCY expressed their concurrence in the opinion pronounced by the Chief Justice.

Mr. Senator S. ALLEN was also in favor of an affirmance of the orders of the chancellor. He was of opinion that the

ALBANY,
Dec. 1829.

Beach
v,
Fulton Bank.

granting of an application for the re-examination of a witness must necessarily be left to the discretion of the chancellor, to be exercised according to the circumstances of each case, or otherwise there would be no telling when the testimony would close or when a cause in chancery would be ended. He deemed it right too that the appellants asking for equity should do equity.

Mr. Senator BENTON was in favor of affirmance, for the reasons assigned by the *chancellor* in denying the applications.

Whereupon, it was unanimously ordered, adjudged and decreed, that the several orders of the chancellor appealed from in this case be affirmed, &c.