Jos. A. James v. Cin., Ham. & Dayton R. R. Co. et al.

(No. 6,857.)

1. Where subscriptions to stock are made, to be paid in installments, and certificates of stock are to be issued for the several installments, a readiness and willingness to issue the certificates, at the time payment is to be made, is all that can be required.

2. In an action to recover money agreed to be paid for the stock, an averment of a readiness and willingness to issue and deliver the certificates of stock is necessary. The right to enforce payment is not distinct and independent from the ability to issue and deliver the stock. If the subscriber can not get the stock, the payment of money can not be enforced. The acts to be done must be regarded as cotemporaneous.

3. When a party, having the ability to perform an executory contract, on

his part, assigns his interest in such contract, he must be considered as equitably bound to perform it, so as to give the benefit of it to the assignee. He can not be permitted to say he is not ready. If, on the day fixed for performance, he had the ability, he must be considered, so far as the assignee is concerned, as having the willingness.

4. The assignment of a contract, and notice of that assignment, creates no additional burden, nor does it impose any additional duty of active diligence upon the contractor. If the subject-matter of the contract be left within the power and under the control of the assignor, the risk of its being impaired or destroyed, so as to defeat the performance, is assumed by the assignee. There is no principle by which it would be thrown on the other party.

5. Where a foreign law is in dispute, whether there be such a law is a matter of fact for averment and proof. When it is shown in evidence, its construction and effect is for the court.

6. It has been said that the powers of a corporation are only such as the law of its creation gives; but this leads to another question: what powers does its charter, or act of creation, fairly and properly construed, give? It is in such case, a question of construction.

7. Powers conferred upon corporations are of two descriptions; some are general, others special and limited. Some have reference to the mode in which acts are to be done, and are merely directory; others are in the nature of a limitation of power or a condition precedent. Third persons, acting in good faith, are not usually to be affected by an excess or violation of the former, on the part of the company; but of the latter they are. The act itself must be regarded as illegal, and knowledge is presumed.

8. When the organization of a railroad company takes place, which organization is usually formed by the instrumentality of commissioners appointed for that purpose, the authority of the commissioners ceases; and, in the absence of any special provisions to the contrary, all power as to any further subscriptions to the capital stock vest in the corporate body. Its dealing with third persons, as to its stock, must stand upon the footing of ordinary contracts.

9. If the article which the party agrees to supply has a certain and known character, that party has no right to change or alter its character, and still expect it to be received in fulfillment of the contract, unless the change be within the contemplation of the parties. If the acts of one of the parties, after the making of a contract, have so injuriously affected the subject-matter of the contract as to destroy the benefits expected from it by the other party, this would be a defense.

SPECIAL TERM.—On demurrer to answer.

This was an action brought upon an agreement of the Cincinnati, Hamilton & Dayton Railroad Co., to subscribe

to the stock of the Cincinnati, Logansport & Chicago Railway Co. The action is brought by the plaintiff to enforce an assignment, in trust of the money due on the subscription, made by the Cincinnati, Logansport & Chicago Railway Co. The object of the action is to compel a specific execution of the agreement, and thereby relieve the plaintiff from liabilities assumed on the faith of the security given by the assignment. The trustee to whom the assignment was made, it is alleged, refuses to take any steps to carry out the agreement. The petition, therefore, brings all the parties before the court, and asks to have the agreement enforced by a payment of the subscription, and the application of the money to the relief of the plaintiff and of others in a like position; and there is also a prayer for general relief.

To the petition the Cincinnati, Hamilton & Dayton Railroad Co. filed an answer, setting up seven several grounds of defense. To all and each of these there is a demurrer by the plaintiff, on the ground that they do not constitute any defense to the action.

*Ferguson & Long* for plaintiff.

*Worthington & Matthews* for defendants.

GHOLSON, J. The questions involved by the demurrer to the grounds of defense are, some of them, of a technical character, and do not affect the merits of the controversy between the parties. I will first dispose of the questions of this character, and then consider those which appear to be connected with the merits.

The first ground of defense is an allegation that none of the shares of the capital stock of the Cincinnati, Logansport & Chicago Railway Co., alleged to have been subscribed, have ever been delivered or tendered to the defendant. Upon looking at the agreement, it clearly appears that an actual delivery or tender of the shares of stock is not a condition precedent to a demand of the subscription. The amount subscribed

was to be paid in installments, and certificates of stock were to be issued for the several installments paid. A readiness and willingness to issue the certificates at the time payment was to be made is all that could have been required. 6 M. & G. 942; 8 M. & W. 372; 50 E. C. L. 222. The matter stated in the first ground of defense is not, therefore, in itself, sufficient to bar or preclude a recovery on the part of the plaintiff; but it may raise the question whether the petition of the plaintiff is not defective for not containing an averment of a readiness and willingness on the part of the Cincinnati, Logansport & Chicago R. R. Co. to deliver the certificates of stock.

There are cases where delivery on payment is not a condition precedent, and no tender need be shown; and yet an averment of readiness and willingness, and notice thereof, will be required. 6 M. & G. 942; 8 M. & W. 372. If this case stood as a simple action on the part of the Cincinnati, Logansport & Chicago Railway Co., to recover the money agreed to be paid for the stock, it is my opinion that an averment of a readiness and willingness to issue and deliver the certificates of stock would be necessary. The right to enforce payment is not distinct and independent from the ability to issue and deliver the stock. If the defendant can not get the stock, the payment of the money is not to be enforced. The acts to be done must be regarded as contemporaneous.

Is the rule which would apply to the Cincinnati, Logansport & Chicago Railway Co. to be dispensed with on account of the different attitude in which the plaintiff stands, on account of facts stated in the petition? What is the nature of the present action? It is really for the specific execution of an assignment and trust, in which the plaintiff has an interest. While the plaintiff may really have no greater or better right to demand the payment of money from the defendant than would the Cincinnati, Logansport & Chicago Railway Co. had there been no assignment, he may have the right to present his case in a different way. He may have the right to bring the two parties before the court and

compel a performance of the contract, and with that view institute an inquiry whether it ought to be performed. If the defendant was prevented from performing, at the time stipulated, by a want of readiness and willingness on the part of Cincinnati, Logansport & Chicago Railway Co., such a fact may really be considered to be more in the knowledge of the defendant than of the plaintiff. So far as the Cincinnati, Logansport & Chicago Railway Co. is concerned, it must be considered, in respect to the plaintiff, as both ready and willing. When a party, having the ability to perform an executory contract on his part, assigns his interest in such contract, he must be considered as equitably bound to perform it, so as to give the benefit of it to the assignee. He can not be permitted to say he is not ready. If, on the day fixed for performance, he had the ability, he must be considered, so far as the assignee is concerned, as having the willingness.

There are facts set out in the petition, which tend to show that the defendant was permitted to take, and did take, possession of the stock, so far as it was capable of possession. The delivery of certificates would, under such circumstances, be really only an additional evidence of a right, the enjoyment of which was already complete.

In view, then, of the different position of the plaintiff, and of the circumstances which he states in his petition, I do not think it is to be regarded as fatally defective, for the want of an averment of a readiness and willingness on the part of Cincinnati, Logansport, and Chicago Railway Company to issue certificates of stock on payment of the installments agreed to be paid by the defendant. The demurrer, therefore, to the first ground of defense will be sustained.

The second ground of defense is, that the Cincinnati, Logansport, and Chicago Railway Company had no power, under the law of its creation, to agree to receive subscriptions to its capital stock, or to issue certificates so provided in the agreement with the defendant, and that, therefore, the agreement is invalid and void, and the consideration for

the undertaking on the part of the defendant wholly fails. This, if true, is a good ground of defense, for, not to speak of the objection of illegality, when it is shown that the defendant can not get the stock, or that it would be worthless, payment for it ought not to be enforced.   The point of the demurrer, however, is, that the laws of Indiana should be set out, so that the court might adjudge as to the illegality; in other words, it is claimed that the defendant is pleading a matter of law as an issue for the jury.   Were the laws of Ohio under consideration, the objection might be good, and the defendant, instead of pleading illegality as a matter of fact, should properly demur to the petition, which sets forth the contract alleged to be illegal.   But there is a difference when a foreign law is in dispute.   Whether there be such a law is a matter of fact for averment and proof.   When it is shown in evidence its construction and effect may be matter for the determination of the court.   11 Cl. & Fin. 115, 116; 50 E. C. L. 250; 10 Ala. 895, 897.   Whether the Cincinnati, Logansport & Chicago Railway Company had power to make such an agreement, will probably be found to depend on the charter granted to it by the legislature of Indiana.   That charter, being a law of another State, can only be properly brought before the court by its introduction as evidence.   When thus produced, being a written instrument, its construction will be for the court.   The demurrer to this ground of defense will be overruled.

The sixth ground of defense is that certain representations were made to induce the defendant to enter into the agreement for the subscription of stock; that these representations were untrue; that they were made by agents of the Cincinnati, Logansport and Chicago Railway Company for the purpose of inducing the board of directors of the defendant to enter into contract, that the latter relied upon the truth of the same; "and by means of the same were *fraudulently* induced to consent to said subscription and to said supposed agreement for the payment of the same."

The point relied on in support of the demurrer is, that it

does not appear that the representations were made in bad faith, or with knowledge of their untruth.   Upon a demurrer to an answer the inquiry is not whether allegations in it are sufficiently definite and certain, but whether upon any fair and reasonable construction, they make out a case of defense to the action.   If by any fair and reasonable intendment in favor of the pleading, it can be sustained, under the liberal system provided by our code, this should be done, leaving the party, if he doubt as to the meaning of the pleading, and is not, therefore, able properly to meet it on the trial, to apply to have it made definite and certain. Having this rule in view, I think the answer as to this ground must be deemed sufficient.   The general exception that the board of directors of the defendant were *fraudulently* induced by the representations which are set out to enter into the contract, may very fairly be construed as a charge of a fraudulent knowledge or intent in those who made the representations.   It may also be remarked from the very nature of some of the representations, if they were untrue in fact, it must have been known to the agents and officers of the Cincinnati, Logansport and Chicago Railway Company.

The seventh ground of defense to be properly understood, requires a reference to certain agreements.   It appears that on the 13th December, 1853, the Cincinnati, Hamilton and Dayton Railway Company of the first part, and the Eaton and Hamilton, the Richmond and Miami, the Cincinnati, Logansport, and Chicago, and the Logansport and Chicago Railway Companies of the second part, entered into an agreement for the jointly stocking and running their respective roads, intending to form a line from Cincinnati to Chicago of a uniform gauge.   The agreement contained various stipulations for the benefit of the respective parties, and was to continue in force for twenty years, and thereafter until either party should give the other one year's previous notice of its termination.   On the same day, and in consideration of the covenants contained in that agreement, the defendant

agreed to subscribe to the capital stock of the Cincinnati, Logansport, and Chicago Railway Company six thousand shares of $50 each, making $300,000, said stock to be taken and paid for at the rate of seventy-five cents on the dollar, as follows: $100,000 in locomotives and cars at their cost value, and the remaining $125,000 to be paid in half-yearly installments, beginning on the 1st July, 1855. Certificates of stock to be issued for the several installments paid.

The ground of defense is, that the contract for a running arrangement has been abandoned by the Cincinnati, Logansport and Chicago Railway Company; that, thereupon, it has been treated and considered as abandoned and rescinded by all the other parties. There is added a denial that the $100,000 in locomotives and cars has been paid, as alleged in the petition. From these premises, it is claimed that the contract for subscription became, and was also annulled and rescinded, and is no longer of any binding force or obligation.

It is difficult to see how the performance of the first contract by the parties thereto could be considered in the nature of a consideration precedent to the right to demand performance of the second contract. Undoubtedly the first contract was a consideration and inducement to the second; but the covenants, and not their fulfillment, constituted, in law, that consideration and inducement—a consideration executed at the time, as shown from its very nature. It moved not only from the Cincinnati, Logansport and Chicago Railway Company, but from the other parties, who united with it in the first agreement. It could not be expected that their compliance was to be enforced by the Cincinnati, Logansport and Chicago Railway Company. All that could be expected, and all that was required, as clearly shown by the language of the second agreement, was "the covenants." These covenants the Cincinnati, Hamilton and Dayton Railroad Company might enforce or release at its option. Substantially, a mutual release, or waiver, is all that is shown in the seventh ground of defense, and for

Jos. A. James *v.* Cin., Ham. & Dayton R. R. Co. et al.

the reasons stated, the other contract can not be affected thereby, and the demurrer must be sustained. *Lewis* v. *Clifton,* 78 E. C. L. 253.

Returning to the 3d and 4th grounds of defense, which are of vital import to the action of the plaintiff, they may, very properly, be considered together, depending, as they do, in my opinion, upon the same point. They are both founded upon a supposed want of power in the defendant, to enter into the agreement on which the plaintiff relies. It is claimed, in the third ground of defense, that the defendant could not enter into such an agreement without the assent of the holders of two-thirds of its stock; and in the fourth ground of defense, that the defendant was prohibited from subscribing in aid of any railroad, unless it connected with its main line, and it is alleged that the Cincinnati, Logansport and Chicago Railway did not so connect.

The questions involved in this branch of the case depend on the powers of the defendant under its act of incorporation. These powers are derived from the legislative enactments of Ohio, and of them the court is bound to take notice. Reliance has been placed in the argument by the counsel for both parties, upon the general principles applicable to the question of the powers of a corporation. It is claimed that they are only such as the law of its creation gives. This is, undoubtedly, a correct proposition. But it does not answer the question, and only leads to another. What are the powers given to a corporation by the law of its creation, properly construed? Here a preliminary question arises. It is sought to apply a strict rule of construction. A charter, it is said, must be strictly construed, and so as only to embrace such powers as are granted in express terms, or by necessary implication. Such is, undoubtedly, the rule in certain classes of cases, arising upon the construction of charters. Where, by the grant of the government, privileges are conferred upon corporators, which as individuals they could not exercise, such a grant should be construed strictly against the corporators, and liberally to-

ward the public.  " Any ambiguity in the terms of the grant must operate against the corporation and in favor of the public, and the corporation can claim nothing that is not clearly given by the law."  9 Howard 172, 192; 11 Peters 589, 598; 11 Cl. and Fin. 143, and 21 Conn. 306.

But in such cases, it is not meant "that the charter is to receive a strained and unreasonable interpretation, contrary to the obvious intention of the grant.  It must be fairly examined and considered, and reasonably and justly expounded."  9 Howard 172, 192.  And this strict rule of construction can not be properly extended to cases in which, by the charter or grant, nothing is taken from the public, or the rights of the public are in no way infringed; where the corporation is really only an organized partnership, and the corporators are authorized to do as such, only acts which as individuals they would have a perfect right to do.  It will be found that the cases in which this strict rule of construction has been applied, are chiefly those in which corporations have claimed a delegation of some prerogative of the government as to take private property, or to exercise some franchise.  There are cases in which a strict rule of construction has been sought to be applied on the ground of the mode in which acts of incorporation are obtained.  Their language, it is said, is not that of the legislature but of their promoters, and should, therefore, be strictly construed.  49 Eng. Com. Law 253, 288.  This was said in reference to the mode of obtaining grants of power to a railway company from the British Parliament, which is different from the legislative practice in this State, and an argument drawn from it can furnish no safe guide.  It is more reasonable, as said recently in a case of this kind, to take the charter " as we find it on the statute book, and give it operation and effect according to the intention of the legislature, to be gathered from its provisions."  10 Maryl. 536, 543.

Whether, therefore, the defendant had under its charter the power, which is the subject of consideration in this case, is a question of construction.  Powers conferred upon the

defendant are either general or special.   The general corporate powers, whether taken in the language of the original charter, or in that of the general railroad law of 1848, are quite extensive.   They are certainly sufficiently broad, in the absence of any direct limitation, to authorize the entering into the agreement which is the subject of the present controversy.   It is to be "deemed a body corporate."   The ideal being called a corporation, has been defined "to be a continuous identity; endowed at its creation with capacity for endless duration; residing, in the grantees of it and their successors, its acts being determined by the will of a majority of the existing body of its grantees or their successors at any given time, acting within the limits imposed by the constitution of their body politic; such will being signified to strangers by writing under the common seal; having a name, and under such name a capacity for taking, holding and enjoying all kinds of property, a qualified right of disposing of its possessions, and also a capacity for taking, holding, and enjoying, but inalienably, liberties, franchises, exemptions, and privileges, together with the right and obligation of suing and being sued only under such name." Such, it is said, are the attributes of a corporation proper, that is to say, a corporation created merely as a corporation, without any restrictive or limiting clauses in the instrument of creation.   Grant on corporations, 4, 5.   But it rarely, if ever happens that a corporation is not subject to restrictions and limitations, and these may be directory as to the mode of the exercise of its powers, or in the nature of conditions precedent or limitations to the right to exercise.   With the former, I take it, third persons, acting in good faith have no concern.   A compliance with them may be enforced as between the corporators and their agents, or as between the government and the corporation.   But third persons should not be affected by a failure to comply, unless guilty of some complicity in the act of commission or omission.   For example, if a railroad corporation have a general power to contract and be contracted with, or to purchase any personal

property, it may be there is, either express or implied, a restriction, that the subject matter of the contract shall be " necessary or convenient" for the objects of the corporation. But surely, it can not be required that a party called on to supply any article to the officers of a railroad company shall take care to inform himself whether it be necessary and convenient to carry into effect the objects of the incorporation. It must be considered that any restriction of this character to the exercise of a general power falls within the class of those which are merely directory. Any other rule would make the numerous corporations scattered over the country, instruments which might be readily used to cheat and defraud the public. And it has been said that " the safety of men, in their daily contracts, requires that this doctrine of *ultra vires* should be confined within narrow bounds." *East. Counties R. W. Co.* v. *Hawkes,* 35 Eng. L. and E. 31; *Bargate* v. *Shortridge,* 31 Eng. L. and E. 59; 14 Pa. St. 81, 84.

If a party dealing with the officers or agents of a corporation in reference to a matter which may or not be one properly within the scope of its powers, according to the purpose or object intended, knows that an improper purpose or object is in view (and such knowledge might be inferred from the very nature of the subject matter), then, as to him, the transaction would be illegal; not so much, perhaps, because it was prohibited by the law, as because he was complicated with a wrongful act and breach of trust. Where an act is in itself illegal, the question of knowledge does not properly arise. Parties contracting as to such an act must be supposed to know its illegality. And this is the case as to those restrictions on the powers of a corporation, which are in the nature of conditions precedent or limitations, shown by the express provisions of its charter, or by inference from its terms. If upon a reasonable and fair construction of the act of the legislature, from which the corporation derives its powers, an intention appears, to prohibit that which is the subject of a contract—to exclude it from the general powers of the corporation, or to provide that it shall

be done only in a specified mode, it necessarily follows, that the contract can not be sustained. It need not be averred or proved that both parties had knowledge of such an illegality, for being made illegal by a law of the land, it is supposed to be known, and ignorance would be no excuse. *S. Y. Railway Co.* v. *G. N. Railway Co.*, 9 Exch. 55, 84; *Norwich* v. *Norfolk R. Co.*, 4 E. and B. 397; 13 S. and M. 408, 411, *Haynes* v. *Covington;* 1 Sandf. Ch. 280, *Barry* v. *Mer. Exch. Co.;* 3 Wend. 573, *Beach* v. *Fulton Bank;* 1 Richardson, 281, 288, *Bank of S. C.* v. *Hammond; E. Anglian R. Co.* v. *E. Counties R. Co.*, 73 E. C. L. 775, 813.

Such being, in my opinion, the rules by which the inquiry is to be guided, I proceed to consider whether the agreement, to the illegality of which the third and fourth grounds of defense are directed, is subject to that objection. The third ground of defense has been prepared in view of the provisions of the 4th section of the act of 3d March, 1851, relating to railroad companies. It is quite evident those provisions are enabling, and not restrictive. If the power to do the acts mentioned existed, no intention is shown to divest such power. If the power was then, for the first time, conferred, of course it may be very properly claimed that it could only be exercised under the condition of obtaining the assent of the stockholders. Now, I can not doubt but the defendant had power to make such an agreement as the one in question, under its general powers. If this be so, there was no intention, on the part of the legislature, even if its constitutional authority were admitted, to divest the defendant of the powers before granted. Here, it will be observed, that while the general law of 1848 was, in 1849, made part of the charter of defendant, by a special act, there is no averment that the defendant has ever adopted, as part of its charter, any of the subsequent general laws.

The fourth ground of defense depends upon the construction of the 6th section of the act of March 15th, 1849, which adopts as the charter of the defendant the railroad law of 1848. It is, in that section, provided that the defendant

18

may "aid in the construction of any other line, or side line, to connect with its main line of road." There is very great force in the argument that a direct and express authority to aid in the construction of certain defined lines, must be regarded as an exclusion of the power to aid in any other line not coming within the description of those authorized. A contract to aid in the construction of a line not authorized, might be considered as impliedly prohibited, and, therefore, void. It would not be a mere excess of power, or the exercise of a power in an improper manner, but the doing that which the law prohibited; and, in such a case, I should certainly feel bound by the authorities which have been cited, to hold that the agreement to do that which was so prohibited could not be enforced. The point, however, in which both the third and fourth grounds of defense are, in my opinion, defective, consists in the want of any averment that the agreement under consideration was made " to aid in the construction of the line of the Cincinnati, Logansport and Chicago Railway Company." Nothing is said in either of the agreements, which have been before described, of any such object. For aught that appears, all the roads mentioned in the agreements had been constructed, and the professed object of the first agreement is the stocking and running the roads. To make good, therefore, the grounds of defense, it is incumbent on the defendant to show that its broad, general powers were restricted and limited, not only as to aiding in the construction of lines of road by a subscription of stock, or otherwise, but as to the bargaining and contracting in any manner, or for any consideration, in relation to the purchase or subscription of stock.

It was admitted in the argument that it was competent for the defendant to enter into an agreement for a running arrangement such as the one made in this case. For the benefits of such an agreement, it was competent, then, for the defendant to pay an adequate consideration. The form of that consideration can not be material. It may be to pay money, or to take stock in another company at a reduced rate. In this case, the different companies with which the

defendant contracted, instead of exacting a moneyed consideration for their covenants, were content with the agreement of the defendant to subscribe for stock in one of them; and this may have been the same as a moneyed consideration to all. On its face, it is certainly not an aiding in the construction of a line of railroad. The purpose and object, a beneficial running arrangement, it is admitted, were valid, and I can not say that the nature of the consideration to be given was invalid. If the real design was a mere shift and conveyance to evade the law, the facts and circumstances showing this should be stated in the pleadings.

The fifth ground of defense remains to be considered The substance of this ground of defense is, that after the agreement to subscribe stock, the Cincinnati, Logansport and Chicago Railway Company, by acts stated in detail in the answer, so changed the nature and character of its capital stock, as to make it substantially a new stock, and entirely different from what the defendant agreed to receive, in effect, destroying the subject matter of the contract, and rendering it impossible of performance. The acts which are claimed to have resulted in these consequences, are alleged to have been done without the knowledge or assent of the defendant.

It appears from the pleadings that the defendant is not to be regarded as a subscriber of stock in an unorganized company, and afterward uniting in the organization, but as contracting with an organized company for a portion of its capital stock. Railroad companies are usually formed by the instrumentality of commissioners appointed for the purpose. When the organization of the company takes place, the authority of the commissioners ceases; and, in the absence of any special provision to the contrary, all powers as to any further subscription to the capital stock vest in the corporate body. *Plank Road Co.* v. *Hoffman*, 9 *Maryl.* 559–568. Its dealing with third persons as to its stock, must stand upon the footing of ordinary contracts. If a corporate body agrees to supply and furnish a certain quantity of

its stock to a third person for a specified price, I know of no rule that can govern such a contract, which would not apply, in analogous circumstances, to any other contract. If the article which a party agrees to supply has a certain and known character, that party has no right to change and alter its character, and still expect it to be received in fulfillment of the contract. It is really a question of identity. If the change be one which may be supposed to be within the contemplation of the parties, there can be no complaint. Such would probably be presumed in reference to changes not substantially affecting the nature and character of the article. But where the change is radical, and, from the circumstances, clearly not contemplated, it would be manifestly unjust to enforce the contract, and, particularly, where such a change was the result of the intentional acts of the very party asking to have it enforced. *Everhart* v. *Philadelphia and West Chester R. R. Co.*, 28 Pa. St. 339–352 ; 13 Ill. 504, *Banet* v. *Alton S. R. R. Co.;* 16 Mees. & Welsb. 804–808.

The question of the power of a corporation to make a change in the character and nature of its stock, as by embracing another and different purpose under the authority of the legislature, is not to be confounded with the question whether, the change having been made, a party is still bound to carry out an agreement to take the stock. There may be a very marked difference between the position and rights of one who is actually a stockholder and corporator, and one whom it is sought to make a stockholder and corporator. The one who is actually in the corporation may be bound by the acts of the majority, or may be compelled to resort to preventive steps. The latter has a right to stand upon the terms of his contract with the corporation, and to require the delivery, in fulfillment of its terms, of that which he was to receive.

There is another principle to be regarded in this case. The action, as before stated, is really for the specific performance of an agreement. The object is to require the defendant to take the stock and pay the price, and not

merely for the recovery of damages for a refusal to accept and pay. Now in this view, if the acts of one of the parties after the making of a contract have so injuriously affected the subject matter of a contract, as to destroy the benefits expected from it by the other party, such acts may present a conclusive answer to an application for the exercise of a jurisdiction, which has always been considered discretionary and only to be afforded in cases where there has been diligence and good faith.

In view of these principles, if the facts stated show such a change and alteration in the character of the stock, as may be considered radical and material, and substantially affecting its identity, the fifth ground of defense must be deemed sufficient. I am satisfied that under the averments in the answer such a change may be made out by proof; and I can not say as a matter of law, that admitting the facts stated, and all inferences which might be drawn from them there would be no such change and alteration, as the rule on the subject, which has been stated would require.

It has been objected, however, that the defendant became actually a stockholder, and must be considered as bound by and assenting to the change in the character of the corporation and its stock. What effect the conduct of the defendant in acting as a stockholder and voting all the shares of stock which were agreed to be subscribed, may have, when established by proof, it is not now necessary to inquire. Such acts can have no greater effect than showing knowledge and assent to the change and alteration, stated in the answer, and any such knowledge or assent is denied. This denial, which must be considered as sustaining the answer in this particular is, it is true, made in general terms, but upon a demurrer this has been deemed sufficient. It may also be found that a party who, upon a mere subscription, is allowed to vote and act as a stockholder, while he may, by so doing, waive any matter before occurring, as to matters subsequent, which were inconsistent with his rights as a contracting party, would not be estopped. He might

be regarded as in an anomalous condition—in part a stock-holder and in part a contractor to become a stockholder. He might have acted as a stockholder on the faith of a compliance with his contract to become one, and on the breach of that contract may very properly claim the rights of a contract-ing party. Cases of this description will generally depend on their particular circumstances. And it may be proper to add, that admitting the want of any direct assent on the part of the defendant, to the changes made in the Cincinnati, Logansport & Chicago Railway Co., as stated in the answer, their character appears to have been such as to have been peculiarly objectionable to the defendant. If, after such a change, the balance of an impaired subscription could be enforced, it should only be as a strict legal right.

One more view, which has been pressed as to this ground of defense, has to be examined. It has been claimed that such a defense, though valid against the original contracting party, would not avail against the assignee. Upon this point I feel no difficulty in coming to a conclusion. The assignment of the contract, and notice of that assignment, created no additional burden, nor imposed any additional duty of active diligence upon the defendant. *Mangles* v. *Dixon*, 3 H. L. Cas. 702. The defense is, in substance, a want of ability on the part of one of the contracting parties to comply with the terms of the contract. If this want of ability had been caused by the defendant, after notice of the assignment, then the assignee might justly complain of such an act as a fraud upon his rights. But how can it be claimed that the assignment and notice devolved upon the defendant the duty of so supervising and controlling the acts of the assignor, that a continued ability to perform should exist? It would be for the assignee, and not the defendant, to protect and secure rights depending upon the conduct of the assignor. If the subject matter of the contract be left within the power and under the control of the assignor, the risk of its being impaired or destroyed, so as to defeat the performance, is assumed by the assignee.

There is no principle by which it could be thrown on the other party.

The result of the views which have been expressed is, that the demurrer must be sustained as to the first, third, fourth and seventh grounds of defense, and overruled as to the others.