·WILLIS S. NELSON, Respondent, v. ELIJAH DRAKE, Appellant.

*Chattel mortgage executed by the president of an association — validity of — who cannot question.*

By the articles of association of the Rochester Towing Company, the control and management of all its business and affairs were vested in seven trustees, any four being authorized to transact business; they were also authorized to appoint agents and officers and prescribe their duties. By a resolution of the stockholders, passed December 9, 1873, they were authorized to mortgage, control, sell and dispose of the property of the company for the best interest of the company. In April, 1874, in pursuance of a resolution of the trustees, a chattel mortgage was executed by its president upon all the property of the company to T. & W. Subsequently, and in August, 1874, Smith, who was called the president of the board of trustees and had been treated as such, executed a second chattel mortgage upon the property acquired since the execution of the first.

Thereafter an agent of the company transferred to the defendant a portion of the property of the company, covered by the second mortgage, in payment of a pre-existing indebtedness. The mortgagees having demanded the possession of the mortgaged property, this action was brought by the plaintiff, their assignee, to recover that portion of the property converted by the defendant.

*Held*, that as against the defendant the title acquired by the mortgagees was good; that Smith as president had authority to execute the mortgage; that the defendant not being a judgment-creditor or purchaser in good faith, could not insist that the act of Smith in giving the mortgage was fraudulent either as against creditors of the company or as against his co-trustees or the stockholders of the company.

Appeal from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to recover damages for the conversion of a pair of mules. The Rochester Towing Company owned them and executed a chattel mortgage covering them to Thompson and Wilcox, and they assigned their claims to plaintiff, who made demand for the mules. The defendant took them from Dewey, an agent of the towing company, for a feed bill, and kept them two weeks and then sold them. He had sold them before the demand was made. The mortgages were made and were put on record before the mules were turned over to the defendant. The referee found. I. That on or about the 26th day of January, 1869, at the city of Rochester, New York, an association of

persons was organized as a joint stock company, called and known by the name and style of the " Rochester Towing Company," consisting of seven and more shareholders, for the purpose of towing boats on the canals of the State of New York, and the purchasing of horses, harnesses, and every other thing necessary for the conduct and management of such business.

II, That on the 18th day of August, 1874, at the city of Utica, where the said association then had its principal place of business and its principal office, the said " Rochester Towing Company " owned a large number of horses, mules, harness and other property then in use by said company for towing boats and the necessary transaction of its business, and as parcel of such property then owned and had possession of the two mules, the property mentioned and described in the plaintiff's complaint.

III. That on the said 18th day of August, 1874, the said Rochester Towing Company, of Utica aforesaid, by its president and treasurer, R. B. Smith, sold, assigned and transferred to L. M. Thomson, M. G. Thomson and William C. Wilcox, of Utica, by way of mortgage in writing, certain property of the said company, among which were the two mules mentioned and described in the plaintiff's complaint, and being then the property of said company.

IV. That a true copy of the said mortgage was on the 21st day of August, 1874, duly filed in the clerk's office of Oneida county, in the city of Utica.

V. That the said mortgage was given among other things to secure the payment of certain notes of the Rochester Towing Company, indorsed or to be indorsed by the said mortgagees, or some of them, for the accommodation of the said company, and to save the said mortgagees against any and all liability then already incurred, or which the said mortgagees, or either of them, might thereafter incur, in consequence of making indorsements for said company, as therein was particularly described and mentioned.

VI. That in and by said mortgage it was agreed by the Rochester Towing Company and provided among other things that in case of default by the said Rochester Towing Company in the performance of any of the conditions of the said mortgage, or

if at any time before the maturity of the debts and obligations, contingent or otherwise, therein secured, the said mortgagees should deem themselves unsafe or insecure, then and in such case the said mortgagees were by the said mortgage authorized and empowered to take possession of the said property thus mortgaged, or any part thereof, to keep or sell the same, and out of the net proceeds to pay the sums, demands and obligations intended to be secured by said mortgage.

VII. That the said mortgagees indorsed several notes of a large amount, of the said company, for their accommodation, relying upon the security of the said mortgage which remained unpaid October 5, 1874, and the said mortgagees then deeming themselves unsafe and insecure thereafter on the same day served upon the president and treasurer of the said company, R. B. Smith, at Utica, a notice in writing, notifying the said company that they, the said mortgagees, deemed themselves insecure, and of their intention of taking immediate possession of the mortgaged property and immediately afterwards proceeded to take possession of so much of it as they could find.

VIII. That on the 15th day of October, 1874, after the said mortgagees had declared their intention to take possession of the property thus mortgaged and had proceeded to find and secure the same, the defendant in this action took possession of and converted to his own use the two mules described in the plaintiff's complaint—being part of the property thus mortgaged, and claimed to own the same as his own property, and that the value of said two mules was then two hundred dollars.

IX. That the above named mortgagees, before the commencement of this action, and on about the 24th day of May 1875, for value received, sold, assigned and transferred to the plaintiff in this action, all cause and causes of action which the said mortgagees might have or had against the said defendant for such conversion.

And as matters of law, he found and decided that at the time of such conversion by the said defendant, the said two mules were the property of the said mortgagees as against the said defendant; that the taking possession thereof by the said defendant on the said 15th day of October, 1874, was wrongful as against the said

mortgagees and a conversion of the said two mules by the said defendant, for which the said mortgagees above named had at the time of said assignment to plaintiff, a right of action against the defendant to recover the value of said mules in damages, for the said wrongful taking and conversion ; that by such assignment the said right of action passed to the plaintiff, and he was entitled to maintain this action to recover such damages in his own right.

It further appeared in the case that December 9, 1873, by a resolution of the stockholders of the association, the directors were given full power to manage, control, sell and dispose of its property to the best advantage. That a resolution was adopted by the directors April 22, 1874, authorizing the president to execute a chattel mortgage for $20,000, covering the personal property of the association ; that a mortgage was executed by the president April 23, 1874, to L. M. and M. G. Thomson and William C. Wilcox for an existing indebtedness of the association to them, and to secure them for future indorsements, to the amount in all of $20,000. This mortgage did not cover the mules in question, which were purchased by the association after its date.

On August 18, 1874, the president, executed a second mortgage to the same parties to secure the same indebtedness and future indorsements, to the extent of $20,000.

A paper was given in evidence, signed by five of the directors, authorizing the president to sign, execute and deliver all mortgages, etc., for and on behalf of said company which may be considered for the benefit of said company. It had no date, and the date at which it was signed did not appear in the appeal papers.

The only title the defendant had was such as he derived through Dewey, the agent of the company, who, on the 15th October, 1874, turned out the mules to defendant to pay a feed bill. The plaintiff made a demand for them before suit, and the defendant refused to deliver them up, saying he had sold them. The referee reported the damages $200 and ordered the judgment for plaintiff, and the defendant appeals. It was claimed by the defendant that the chattel mortgage was invalid unless the consent of stockholders owning two-thirds of the stock was obtained. That the president of the association had no power to execute it.

*William E. Hobbey,* for the appellant.

*Pardee & Piper,* for the respondent.

HARDIN, J.:

The Rochester Towing Company was a joint-stock association organized in pursuance of articles of association, entered into by sundry persons in January, 1869. The fifth article provided that " the trustees shall have control and management of all business and affairs of the company, appoint all officers and agents who may be deemed necessary, and may prescribe the duties and fix the compensation of such officers and agents; to sell and dispose of all such property belonging to the company as they shall think best." * * * Article four provided: " There shall be seven trustees to take the care and charge of the business affairs of the said company, *with powers to any four* of them to transact *business.*" Article eight provided for the duties of a treasurer.

Roswell B. Smith, as a witness, testified that he became connected with the company in 1869, and continued with it up to the fall of 1874, and that he attended the meetings of the company, and identified the book of record of its proceedings, and it was produced and read in evidence. He was appointed one of the trustees in and by the articles of association. He testified that he executed a chattel mortgage 23d of April, 1874, as president and treasurer, to L. M, and M. G. Thompson and N. C. Wilcox, in the name and under the seal of the company; that it was executed pursuant to a resolution of the trustees, five being present, passed 22d April, 1874, covering all the mules, among other things, then owned by the company. After that the company purchased other mules and property. There was another mortgage executed by the company per Smith, "president and treasurer," August 18, 1874, covering mules, to the same mortgagees to secure $6,874.58, and indorsements to be made for the company by the mortgagees. There was a resolution of the stockholders passed 9th December, 1873, giving to the trustees "full power to manage and control, sell, and dispose of " the property of the company to the best advantage for the interest of the company. Smith applied to the mortgagees for a loan and for indorsements, and they arranged with him to

take the mortgages, became liable, and were obliged to pay and did pay.

They made advances which were used for the benefit of the company upon the mortgage of August 18, 1874. This mortgage covered the pair of mules for which this action was brought. The mortgages were recorded and were taken in good faith. They contained a danger clause, and on the 5th of October, 1874, the mortgagees gave the company notice of their intention to take the property from the possession of the company. The fifth article gave the trustees power to appoint all officers and agents who may be deemed necessary, and to prescribe the duties. This authorized them to appoint Smith president, as the proceedings show they called him and treated him. It also authorized them to prescribe his duties.

There was power in the trustee Smith, who was also president and treasurer, to pledge and mortgage the property of the company, in payment of its indebtedness, and to secure the mortgagees for loan of money and credit. (*Mabbett* v. *White*, 12 N. Y., 454; *Graser* v. *Stellwagen*, 25 id., 315.)

The defendant did not set up in his answer that he was a judgment creditor, nor that he was a purchaser in good faith of the property; nor did he make any such proof upon the trial; all that he proved was that an agent of the company turned out the property October 15, 1874, in payment of an antecedent debt of the defendant against the towing company for feed. He did not put himself in a position to challenge the transfer to the mortgagees by the company, on the ground of fraud against the creditors of the company, or that the transfer and mortgage were fraudulent as against the other trustees or stockholders. (25 N. Y., 317; *Beaty* v. *Swarthout*, 32 Barb., 293.)

The company received the benefit of the indorsements derived under the chattel mortgage of August 18, 1874, and could not repudiate the act of its president and treasurer without returning the money and benefit derived. The execution of the mortgage was not against good moral and public policy, and the company would not be allowed to repudiate it without returning the benefits derived under it. It was good between the parties, and could be enforced by the mortgagees against the company. In other

words, the company holding the moneys and benefits derived under the mortgages, would be estopped from questioning the transfer. (*Steam Co.* v. *Weed*, 17 Barb., 378; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62.) After the mortgages of August 18, 1874, the mortgagees indorsed and paid for the benefit of the company $12,000, which was not repaid to them. They were entitled to hold and enforce the mortgages, and as the defendant took the property and converted it, and refused to deliver it upon their demand, he became liable for its value. They assigned their cause of action to the plaintiff, who has recovered the value of the mules converted by the defendant.

The learned referee properly held, as a conclusion, that, "at the time of such conversion by the said defendant, the said two mules were the property of the said mortgagees *as against the said defendant;* that the taking possession thereof by the said defendant, on the said 15th day of October, 1874, was wrongful as against the said mortgagees." The complaint sufficiently alleged, first. That the mules were the property of the mortgagees, and that they were entitled to the possession thereof. Second, That the mortgagees sold their demand and claim for the conversion to the plaintiff; and third. The value of the mules at the time of the conversion.

The mortgages were therefore properly allowed in evidence, and the assignment to the plaintiff of the cause of action, of the mortgagees. The exceptions by the defendant to the admission of them in evidence were not well taken. The judgment should be affirmed.

TALCOTT, P. J. and SMITH, J., concurred.

Judgment affirmed.