Lessee of DAVID WARE and HENRIETTA his wife *against* ARCHIBALD FISHER and ANNE FRANCES his wife, and REBECCA DENNIS.

Devise of lands to trustees for the use of his wife during life, and after her death to five children as tenants in common; but if any of them should die before his wife's decease, their shares to go to their legal representatives, according to the common law or as modified by the law of the states wherein they are situated respectively.

One of the children died in the testator's life, his wife survived him ; the share of the child so dying is not a lapsed legacy, but goes over to his legal representatives, who take as purchasers, and her brother of the whole blood will inherit her share, she dying in 1786, and the testator in 1797.

EJECTMENT for a lot of ground, in the Northern Liberties, in Philadelphia county.

The following case was stated for the decision of the court, and the situation of the parties rendering a speedy determination indispensably necessary, it was submitted in the vacation to Shippen, Chief Justice, Yeates and Smith, Justices, by the counsel on both sides, with their arguments in writing, under an agreement that judgment should be entered thereon conformably to their opinion.

Richard Dennis being seized in fee of the premises, made his last will and testament in writing, bearing date the 17th January 1784, which has been since proved according to law, wherein (*inter alia*) he devised as follows. " I give, devise and bequeath to my friends John Wharton, shipwright, and John Morris, esq., and the survivor, and the heirs of the survivor, (except as is hereinafter excepted,) and to his and their heirs and assigns, all my estate, real and personal, · wheresoever lying or being, in trust and for the special and particular purpose that they shall pay to my beloved and most affectionate wife Mary Dennis, all the rents, issues and profits thereof, during the time of her continuing my widow ; and from and immediately after her decease or widowhood, I give devise and bequeath all my said estate, real and personal, to my children, Rebecca Dennis, Anne Frances Fisher, the wife of Archibald Fisher, Barney Cozens Dennis, Henrietta Dennis and Elizabeth Dennis, and to their heirs and assigns as tenants in common, and not as joint-tenants ; and if any of them should ·die before my said wife's decease, then I will and intend that their shares and purparts shall go and be given to their legal representatives, agreeably to the common law of England, or as modified. by the laws of the states wherein they are respectively situated." [Then follows a direction for the maintenance of unmarried children by his wife, and devises of some pecuniary legacies to his son John and two of his grandchildren.] "And whereas it is my intention that no one of my children should. have a greater part of my estate than another, and as at the marriage of my two daughters, Buckley and Fisher, I gave to them furniture and other things, I therefore give, devise and bequeath to each of my three

unmarried daughters, Rebecca, Hannah and Elizabeth, the sum of 100*l.*, to be paid to them respectively on their days of marriage." [And further appoints his wife Mary and John Wharton his executors, &c.]

The testator died on the 3d January 1797, leaving Mary, his widow, who is since dead, and the children hereinafter named, to wit; 1. Rebecca. 2. Anne Frances, (the wife of Archibald Fisher, one of the defendants.) 3. Barney Cozens. And 4. Henrietta, (the wife of David Ware,) lessors of the plaintiff. He also left the following grandchildren, to wit: Hannah, the daughter of John Dennis, his son, who was alive at the time of the said will made, and died in 1788, and John Buckley and Sarah Buckley, children of Mary Buckley, his daughter, who died before the said will made.

The testator, at the time of making his said will, had also a daughter named Elizabeth, who died in her father's life-time in Southwark, in Philadelphia county, at the place of her residence, in 1786, aged about fourteen years.

Barney and Henrietta are of the whole blood to Elizabeth, the other children of Richard Dennis of the half blood only.

The plaintiff claims three tenths parts of the premises, two tenths under Henrietta originally, and one tenth as one of the representatives of Elizabeth.

The question for the justices' determination is whether the share devised to Elizabeth by the said will, lapsed by the death of the said Elizabeth in the life-time of the testator, or passed by the said will to Barney and Henrietta, or to Barney alone? If they shall be of opinion that the said devise to Elizabeth lapsed, judgment is to be given for the plaintiff for one fifth part of the premises ; so if they shall be of opinion that the share devised to Elizabeth goes to Barney ; but if it goes to Barney and Henrietta, then judgment to be given for the plaintiff for three tenths of the premises ; the costs of suit to be equally borne by the parties.

Mr. E. Tilghman for the plaintiff, relied on the following cases : A legacy of 50*l.* is given to D. T. at 21, or marriage ; 50*l.* to E. T. at 21 or marriage ; and if any legatee die before his legacy is payable, the same shall go over to the brothers and sisters of such legatee. D. T. died in the life of the testator ; resolved that it was no lapsed legacy, but it should go to his sister. 2 Vern. 378. Prec. Cha. 471. 1 Wms. 343. 8 Vin. 389, pl. 16.

If a legacy is given to A at 21, and if he die before, to B. though A die in the life of testator, the legacy shall go to B. 2 Vern. 208. 8 Vin. 389, pl. 15.

A devised 300*l.* to his three daughters, A B and C at 21, or marriage ; if any die before, to go to the survivors ; B died in the life-time of the testator; her 300*l.* goes to her two surviving sisters. 2 Vern. 611. 8 Vin. 389, pl. 18.

A devised the surplus of his estate, to his brothers B C and D and the children of his brother E, and of his sister F, equally to be divided ; and if any of my brothers die before my estate is got in and divided, his or their share to go to his or their children. B died in the life of testator ; though B died before A, yet still he died before the estate was gotten in and divided. 2 Vern. 653. 8 Vin. 389, pl. 20. A devise of 500*l.* a piece, to two of his grand children by name, and if either of them died, the share to go over to the survivor ; one of them died in the life of the testator, yet his share went to the other grand-child, and was no lapsed legacy. Prec. Cha. 471.

A legacy of 500*l.* being given to A, and if A died before 21, then to B. Upon A's dying before 21, in testator's life, the legacy is not lapsed, but shall go to B. 1 Wms. 343.

Here, the intention was to prevent a lapse, and that the estate should go in the same way, as if Elizabeth had survived her father. If such a construction is made, as that Elizabeth must be supposed to survive the testator, the words " and if any of them should die before my said wife's decease," &c., will answer no end, and can have no operation. If she had survived the testator, she would have taken a vested remainder, which would have been reduced into possession, on the determination of the widow's interest, and if Elizabeth had died before the widow, it cannot be doubted, that her share would have gone to her children ; or if she had none, to her brothers of the whole blood, without the insertion of any such clause. It follows, that on the confined construction of a death of the testator, the clause is utterly nugatory, and may be totally rejected. But words (much more clauses,) will never be rejected, if a meaning consistent with the rest of the will, can be found for them ; the rule being that the whole must stand and have some effect.

The same construction is to be made now, as if Elizabeth had left children. In such case, it is presumed, there would be no hesitation in determining, that the children would take her share in the same manner as if she had survived her father ; and it necessarily follows, that if the children would have taken, the other heirs of Elizabeth must take. What the testator would have done, had he contemplated the particular case that has happened, it is impossible to say. On the part of the whole blood, it is apprehended, that their case is within the spirit, as

it is clearly within the letter of the will, "a dying before the wife's decease."

Mr. M. Levy for the defendants, contended, that the share devised to Elizabeth, lapsed by her death, in her father's life-time, and that he died intestate as to that portion of his real and personal estate. He founded his opinion on the established principle, that if the devisee dies in the life-time of the testator the devise fails, and is void. Plowd. 344-5. 2d. resolution in Brett and Rigden's case. 1 Wms. 397. Goodright v. Right. 2 Vern. 722. Hutton v. Sympson Doug. 325. Hodgson v. Ambrose. 1 Bro. Cha. Rep. 219. Warner v. White, (in notes.)

The share devised to Elizabeth, is given to her expressly, as a tenant in common, and not as a joint-tenant. Devise to four daughters and their heirs, one of them dies in the life of testator, devise held void for a fourth part. 1 Sid. 53, 78, 9, cited in Prec. Cha. 439. Devise to four daughters and their heirs, equally to be divided, one has issue and dies in the life of testator, devise shall be void for a forth part. 9 Mod. If a devise be to A and B in common, and A dies in the life of testator, his moity is void. 9 Mod. 157.

It may be objected, that in a devise to two, if one dies in the life of the testator, the survivor shall take all. Carter, 4. 1 Co. 100. b. 1 Salk. 238. 1 Vern. 425.

To this is answered, that these are cases in which the devisees take as joint-tenants, *per mie et per tout.* And it is expressly said by Sir Orlando Bridgman, in Carter, 5, that if I give lands to two in jointure, I give the whole to each. But a tenant in common, takes a limited gift, which no casualty incident to the nature of the estate, can enlarge. There is no *jus accrescendi* in such case. The testator gives to each but a certain designated proportion, and if either is incapable of taking, what was intended for him or her, reverts back again to the estate of the donor. He only gave the whole out of him, if all the donees were capable of taking; but where the gift to several is in joint-tenancy, he divests himself of the whole, if any one or more of the donees are capable to take. 1 Co. 100. (Shelley's case.)

It may be further objected, that the question does not rest on the devising clause, by which these estates are devised to the testator's four children, from and immediately after the decease or widowhood of his wife. For the testator goes on to say, " if any of them should die before my said wife's decease, then I will and intend that their shares and purparts shall go and be given to their legal representatives, agreeably to

the common law of England, or as modified by the law of the states, wherein they are respectively situated." And this clause resembles the case in question, to the authorities in 2 Vern. 611, 653.

But to this also it is answered, that in 2 Vern. 611, there was a manifest intent, that if either of the devisees died before she could take, the survivor should take the whole. And it is to be noted, that Mr. Vernon who was very able counsel, adds a *quere*. The case in 2 Vern. 653, does not appear to be decided. If it was, it could only have been on the ground of a clear and plain intent of the testator, arising from the words of the will, and the state of the case. No doubt but a testator may direct, that if the person to whom he first devises any part of his property, die in his life-time, the children of such devisee or any other person, may in such case take in remainder. But then, as it is said by Mr. Justice Blackstone, in his excellent argument in Perrin v. Blake, "this intention of the testator, which is to ride over and control the legal operation of his own words, must be manifest and certain, and not obscure and doubtful, as was resolved by all the judges of England, in Wild's case, (6 Co. 16,) or according to the emphatical words of Lord Hobart, 33, the intent must not be conjectural, but by declaration plain." Now it is contended, there is no plain, clear intent in this case, to overrule the legal operation of the words in the first clause. It is somewhat like the case in 1 Bro. Parl. Cas. 189, 190. 8 Vin. 389, pl. 20. S. C.

The testator must have had an idea, that if either of his children died, whilst his wife was in possession, though after his death, the children of him or her so dying could not take. He must have meant to provide for the event of either devisee dying after him, before his wife's decease. Because, if he had meant, that if either of the devisees in remainder died before himself, he would have said so, and not said before his wife. It was as easy to say the one as the other. Again, this construction would make him provide by his then will, for an event which was to happen in his own life-time, which could better be provided for after it should have happened, when he might predicate a new will upon the existing situation and circumstances of his family at the time, with accuracy and justice. Again, this would in its consequences utterly defeat the intent expressed by the testator, that no one of his children should have a greater share than the rest.

But who are " the legal representatives of Elizabeth, agreeably to the common law of England, or as modified by the law of the states, wherein they are respectively situated."

Elizabeth died in 1786. At that time, the law of descents in

Pennsylvania stood as before the revolution. Two shares to the eldest son, and one to each of the other children. The common law of England, was inconsistent with it, and gave all to the eldest son. Both the common law of England and the Pennsylvania act for regulating descents at that time, gave the whole to the eldest male collateral relation, and nothing to those who were in the ascending line.

In January 1797, when the testator died, all Elizabeth's children would have taken equally, if she had any. The mother would have inherited in the manner prescribed by that act if she had no children. And therefore, the representatives of Elizabeth, according to the rules of the common law were entirely different persons from those under the Pennsylvania act.

The idea that the lands shall go to the representatives according to the laws that regulate descents, in the places where such representatives are situate, and not according to the laws of the places where the lands lie, is an illegal one, and cannot be carried into execution in a court of justice. It is like an attempt to create a perpetuity, or prevent a tenant in tail from suffering a common recovery, and is against the policy of the law.

For these reasons, it is conceived, that this limitation to the legal representatives, &c., is utterly void, because the persons to whom, &c., are uncertain. Cro. El. 742. Taylor and wife v. Sayer. 1 Rol. 609, 1. 12. Hob. 29, 30.

The following certificate was delivered into the office. "We are of opinion, that though Elizabeth Dennis died in her father's life-time, yet by the provision, that if she died before his said wife's decease, then that her share and purpart shall go, and be given to her legal representatives, agreeably to the common law of England, or as modified by the law of the states, the estate will go over to her legal representatives, as purchasers, the words "legal representatives" not being tantamount to the word heirs, that being a technical term of limitation, and measuring out the quantity of estate that the devisee is to take : whereas the words legal representatives are analogous to children, heirs of the body then living, next of kin, &c., which are good words of purchase. The substitution in the stead of Elizabeth, necessarily took place immediately on the testator's death, and is perfectly ascertained by law which fixes the designation. We are likewise of opinion, that Barney Cozens Dennis, the only brother of the whole blood of Elizabeth, takes the real estate devised to her, agree-

ably to the common law, the several acts of assembly not having changed the common law in such a case.

> EDWARD SHIPPEN,
> J. YEATES,
> " agreeably to his written opinion. "

The opinion of Yeates, J. was as follows :

It is undoubtedly a general rule, that on a devise of lands, or a legacy of personalties, if the devisee or legatee die in the life-time of the testator, the same are lapsed. Yet a will may be so penned as to prevent such lapse. But there must be special words, to show clearly, that to be the testator's intention. 1 Wms. 84. Thus, if one devises in the words following : " I give and devise the several legacies and sums following, which I will shall be paid to the several persons hereinafter named, and that if any of those persons should die before the same become due and payable, I will that they or any of them shall not be deemed lapsed legacies ; " and then particularizes the several legatees, and says, " to A, the wife of R, and her executors or administrators, I give the sum of 50l. " A, died in the life of testatrix, and her husband administered to her. Lord Hardwicke decreed the legacy to her husband, on the ground that other persons were named to take in case of the death of the legatee. 3 Atky. 573. Vide 2 Vern. 378. 3 Atky. 581, 582. 3 Bro. Cha. Rep. 240.

It is however urged, that the testator here only meant to provide for the event of any of the devisees dying after him and before his wife's decease, and that if his intentions were otherwise, he might readily have expressed them. To this it is fairly answered, that if such construction is adopted, the superadded words, " and if any of them should die before my said wife's decease, " are deprived of all kind of operation and absolutely rejected. Because without this additional clause, if Elizabeth, the daughter, had survived her father, she would have taken a vested remainder, and if she had died before the same had come into possession, on the death of the widow the same would have descended to her heirs. Consequently, to give force and effect to those words, it becomes necessary to fix the intention of the testator to be that the devises should not lapse, though the devisees died in his lifetime. In Bretton, wife et al. v. Lethulier, 2 Vern, 653, a testator devised the surplus of his estate to is three brothers, the children of his brother C. and of his sister B. equally to be divided, " and if any of his brothers died before his estates as got in and divided, his or their share to go to his or their children. " One of the brothers died in the testator's life. The Lord-Chancellor observed, that though he died before e testator, still he died before the estate was gotten in and divided;

and a will speaks not till the death of the party, but the construction is to be made as matters stood at the time of making the will. Now here, though Elizabeth died before her father, still she died before his said wife's decease.

If this construction be correct, can the limitation over be supported as a good immediate devise, consistent with law ?    Or in other words, can the " legal representatives " of Elizabeth take under this will as purchasers ?

A devise to one in *rerum natura*, and he dies before the testator, it is all one as no devise.    Plowd. 345.

A devise to a wife during life, and after her death to a child *in ventre sa mere*, and to the heirs of such child forever, provided that if such child shall die before the age of 21 years, leaving no issue of its body, reversion over.    The child was never in existence ; and it was held to be the same thing whether the limitation to the child never took effect, or whether it did, and that the remainder over was good.    1 Wils. 106.

Devise of lands to A. and the heirs male of his body, and for default of such issue, remainder over to B.    A dies in the life of testator, leaving issue, the devise to A. is void, and B. shall take the remainder presently. 2 Vern. 723. Andr. 263.

Devise to A. and the heir of his body, and for want of such issue to B.    A. dies before testator, leaving issue, such issue shall take nothing, and the limitation to B, shall not be construed, as an executory devise, but shall vest in possession as an immediate devise, on the testator's death.    Doug. 323. 4 Term Rep. 601.

It must be admitted, that if it appears by the whole of a will, that a testator using the word heirs, means that succession of persons so denominated by law, the rule in Shelley's case, (1 Co. 93,) must in all events take place, notwithstanding the most explicit direction, that such heirs should take by purchase, or that the ancestor should only have an estate for life ; but where the word heirs is used in any other sense, the rule is not applicable, and the limitation must have its effect, as if proper words had been made use of.    Jones v. Morgan. 1 Bro. Cha. Rep. 206.    1 Wms. 142. Cox's ed. (note 2.) 5 Term Rep. 323.

Heirs is a word of limitation and not of purchase.    1 Freem. 293. Nothing can be better established, than if there be a devise to A. and his heirs, or to the heirs of his body, or to A. in tail, and A die in the life-time of testator, the devise is void.    Doug. 323, 330. 4 Term Rep. 603. Plowd. 345.

Issue in a will is either a term of limitation or purchase, as will

best answer the intention of testator; though, in a deed, it is always taken as a word of purchase.   4 Term Rep. 299.

The principle, that an heir should not take a contingent remainder of an estate as a purchaser, where his ancestor took a freehold estate by the same conveyance, rests on the policy of the feudal system, because such depositions, while fiefs were predominant, tended to defraud the lord of the fruits of his tenure, by enabling the heir, with the concurrence of his ancestor, to take the estate as fully as by descent, without the feudal burthens to which it would have been liable had the estate descended.   Hence it became a rule of construction, applicable to all instruments so conceived, that the estate limited to the heir, though meant to be contingent, should in law be considered as vested in the ancestor ; and every devise in which an estate of freehold was given to the ancestor, with an immediate or mediate remainder thereon limited to his heirs, or heirs in tail, or issue (the latter term being considered in a devise as a word of limitation) was considered technically as importing an intent in the devisor so to convey.   Consequently, the words heir or issue, when so used in a devise, cannot take effect as a description of the person, to take as a purchaser.   But when the foundation of the priciple, upon which the rule was grafted, failed, the rule that had been raised thereupon was not extended beyond the precise limits it had at that time reached ; from that period therefore, courts of law and equity seem to have been as industrious to take devises out of that rule of construction, in favor of a contrary intent, where that intent is clear, and must necessarily be collected from the testator's language, as formerly they were to endeavor to bring cases within that rule, while the principle of it continued to operate.   It follows, that the heir or issue of a devisee may now take under that description contingent remainders as purchasers, notwithstanding a previous freehold is limited to the ancestors by the same devise, if there be language so modifying the limitation, as to make it not quadrate exactly with the rule.   Pow. on Dev. 355, 6, 7.

Thus, in Haddon's case (cited Moor. 372) a devise to one for life, and so afterwards to every person that should be his heir for life only, was held to convey an estate in possession to the tenant for life, with a remainder for life to the next heir and nothing more.

So in Loddington v. Kime, a devise to B for life without impeachment of waste, and in case he should have any issue male,to such issue male and his heirs forever ; the subsequent limitation to the issue male of B was held not to make him tenant in tail, but to be a contingent fee to his

issue male, who took by way of purchase, as a devisee specifically de-
scribed.  1  Salk. 224. 1  Ld. Raym. 203, 3  Lev. 435.   A limitation
to the heirs of the body of A now living, shall be good as *designatio
personæ*, notwithstanding the rule *nemo est hæres viventis.*   2 Vent.
311.Pollex. 457. 2 Lev. 232.

So a limitation to the heirs of the body of A then begotten, shall
prevail.  1 Wms. 229. 1  Bro.  Bro. Parl. 489. 2 Bla. Rep. 1010.

And a devise to a son and the heirs of his body, the son being dead
before the will made, the grandson will take as a purchaser.   Cro.
El. 423.

A devise to one and his heirs, may in particular circumstances,
make the heirs take by purchase. 1 Bla. Rep. 265. 2 Burr. 1100.

Heirs or issue, where they take distributively, must take as pur-
chasers. F. Ves. jr. 145.

If a testator makes use of technical phrases, the court are bound to
understand them in the legal sense ; but it is otherwise of words, which
manifestly indicate his intention.   Per. Buller, Just.  Doug. 327.

Where the intention in a will is plain, it ought to control the legal
operation of the words. 2  Wms.  673. 4  Burr. 2246. 4 Bro. Cha.
Rep. 460.

A devisee may be described as first and eldest son not heir at law.
Annal. 96. And an elder daughter may take by devise as special
heir, by particular description. 2 Bl. Rep. 1002.

So a devisee may be described as next of kin. Cro. El. 532. Near-
est relation of the name is likewise a good description of a devisee, and
operates as *noman collectivum.* 1 Vez. 335.

The words used in the will under consideration are " to their legal
representatives, agreeably to the common law of England, or as modified
by the law of the states, wherein they are respectively situated."

In the British statutes of distribution, ( 22 and 23 Car. 2, c. 10,
and one Jac. 2, c. 17,) it is said, that the words " legal representa-
tives" are used for the intestate's children, or their children, or the
descendants of the next of kin.   They mean persons substituted in the
place of others deceased.   2 Bro.  Cha. Rep. 226.

So it is under our intestate act of 1705, 1 Dall. St. Law, Append,
44, § 2, the supplement thereto of 1764.  Ib.  47, §§ 1, 4.  And
under the new act of 19th April 1794.  3 St. Laws 526, §§ 8, 9,
22 ; and the supplement thereto of the 4th April 1797. 4 St. Laws
159, § 7.

In Bridge v. Abbot, where a testatrix bequeathed the residue o

her personal estate to several persons, and if they should die in her life-time, to their legal representatives, one of them died, and the master of the rolls decreed, that his next of kin at the death of the testatrix, should take his share. 3 Bro. Cha. Rep. 224.

The words "legal representatives" have never, as far as I have been able to discover, been construed as technical terms of limitation, measuring out the quantity of estate that a devisee was to take. The case of Duncan's lesse, v. Walker, very briefly reported in 2 Dall. 205, by no means shows it. The objections in Goodright v. Wright, reported in 1 Wms. 397, 1 Stra. 25, 10 Mod. 370 2 Equ. Ca. Ab. 359, pl. 13, against the words issue and heirs, cannot, in my idea, hold in this case. The terms here made use of are analogous to children, heirs of the body then living, or then begotten, next of kin, &c. which are good words of purchase. The substitution in the stead of Elizabeth, necessarily took place immediately on the testator's death, and is perfectly ascertained by law, which fixes the designation. I think there can be no doubt whatever of the intention of Richard Dennis, and that his bounty contemplated the representatives of such of his children as should die before his wife's decease, as his immediate devisees in their place. And thinking as I do, I feel myself bound to follow his intention. Annal. 96. The lot in question lies in the Northern Liberties, in the county of Philadelphia. Elizabeth Dennis resided and died in her minority, unmarried, in Southwark, in the same county.

It remains only to observe, that the intestate act of 1705, solely directing the course of distribution of real estate in cases of lineal descent, does not reach the present case; that the law of 1764 supplementary thereto, changes the common law only where brothers or sisters die intestate in their minority, unmarried and without issue, after the death of any father and mother, and not otherwise; and that none of the provisions of the late act of 1794 extend hereto. It follows therefore, that Barney Cozens Dennis, the only brother of the whole blood of Elizabeth Dennis, takes the real estate devised to her, agreeably to the common law of England, exclusive of the other children of the testator; and I am of opinion that he is legally entitled thereto.

J. YEATES.

Lancaster, May 2d, 1800.