### In the Matter of Hoole, Bankrupt.

*(District Court, S. D. New York.  July 24, 1880.)*

1. USURY—EQUITABLE ADJUSTMENT.—Whenever the parties to an usurious loan are obliged to resort to a court of equity for relief for the foreclosure of securities, or for their redemption, they are forced to submit to an equitable adjustment of the debt, which is held to be the payment of the loan, with lawful interest.  All payments of interest in excess of this are held to be under duress, and not voluntary payments of interest, and are applied in liquidation of the principal.

    *Tiffany* v. *Boatman's Institution*, 18 Wall. 375, 385.

    *Wheelock* v. *Lee*, 64 N. Y. 242, 245.

    *Beach* v. *Fulton Bank*, 3 Wend. 573, 585.

2. SAME—SAME—ASSIGNEE IN BANKRUPTCY.—An assignee in bankruptcy cannot give up the benefit of these equitable principles in the adjustment of an unpaid usurious loan.

3. SAME—SAME—SAME.—*Quære*, whether an assignee in bankruptcy is *bound* to set up usury as a defence to a claim made against the estate for the purpose of avoiding what is, in other respects, a valid and meritorious claim.

    *Beach* v. *Fulton*, 3 Wend. 573.

4. ORDER OF COURT — MISREPRESENTATION.—A bankruptcy court has power to vacate an order authorizing the surrender of certain life insurance policies to a creditor, to whom they had been pledged, upon the release of the debt which they had been given to secure, where such order was procured by a material misrepresentation of the facts, although the misrepresentations were not necessarily fraudulent, where the court would not have originally made such order if the real facts had been known.

5. BANKRUPTCY—COMPROMISE—GENERAL ORDER 20.—Under General Order 20, a bankruptcy court cannot authorize a compromise except upon testimony, and upon a petition "clearly and distinctly" setting forth "the subject-matter of the controversy, and the reasons why the assignee thinks it proper, and most for the interest of the creditors, that it should be settled."

*George A. Black,* for petitioner.

*F. A. Paddock,* for respondent.

CHOATE, D. J. This is an application to the court to vacate an order entered in this proceeding on the twelfth day of April, 1877, whereby the assignee was authorized to surrender to one Charles E. Larned three policies of life insurance belonging to the estate, upon the release by said Larned of the alleged indebtedness as security for which Larned held the policies, under a pledge thereof made by the bankrupt before the filing of the petition in bankruptcy, which indebtedness was alleged to exceed the value of the securities about $350.

The order was entered upon the petition of the assignee, and the accompanying affidavit of Larned, setting forth the following facts: That the petition in bankruptcy was filed February 3, 1877; that May 1, 1876, the bankrupt was indebted to Larned in the sum of $2,715.85 for money loaned; that Larned held, as security for this sum, the three policies for the amount, in all, of $6,000, the present value of which was $2,531.89; that Larned was willing and desirous of accepting the policies in full satisfaction of the debt, and agreed to release the bankrupt estate from all claims and demands upon the transfer of the policies; that the assignee believed this liquidation of the debt would greatly benefit the estate.

The petition was verified by the assignee, and accompanied by an affidavit of Larned to the truth of these facts. Thereupon, and without any notice to creditors, or any further proceeding, the court granted the application and the order was entered.

A creditor now moves to vacate the order on the ground that the estate was not in fact indebted to Larned; that the debt for which the policies were pledged had been paid in full, and that he had no valid claim on the policies, but that they should be surrendered to the assignee as assets belonging to the estate. The petition to vacate the order was filed on the sixteenth of January, 1879. Upon an order to show cause thereon, Larned appeared, and put in an affidavit in answer to the petition denying that the debt had been paid,

or any part of it, and insisting on the truth of the averments of the petition on which the order was entered, alleging that he had sold and assigned the policies to one Ross, and was no longer interested in them. Testimony has been taken upon the petition and answer, and the matter has now been heard upon the papers and the testimony. No point is now made of any assignment of the policies to Ross, nor is there any proof of any such assignment. The case has been argued and submitted as if there was no third party, who had acquired intervening rights which the court might be obliged to recognize and protect.

The material facts proven, and which are not disputed, are as follows: In 1870 the bankrupt was in partnership with his son, John R. Hoole, Jr., in the business of book-binders, and the firm borrowed money of Larned on their note, for which he took as collateral security two of the life policies. John R. Hoole, Jr., died in February, 1872, and thereafter the bankrupt continued the business alone. In May, 1872, in order to settle up the affairs of the firm, the bankrupt took up the firm note and gave his own notes for the loan, the policies remaining as collateral security. During 1873 the bankrupt borrowed a further sum of Larned on his own note, giving him as security the third life policy.

Lending money on security was part of Larned's regular business, and he contined to hold the policies down to the time of the bankruptcy, and till the application of the assignee for leave to transfer them to him upon release of the debt. The notes given were demand notes, but some part of the debt has been paid, and the notes were renewed from time to time for the unpaid amounts; and, at the time of the application to the court by the assignee for leave to make said settlement, Larned held the notes of the bankrupt, on which there was, apparently, due the amount alleged in the petition, $2,715.85, with interest from May 1, 1876.

From the beginning of these transactions, however, John R. Hoole & Son and John R. Hoole allowed and paid interest on the loan far in excess of 7 per cent. per annum, generally at the rate of 2 per cent. a month; and, if the excess of

these payments above legal interest is applied to the payment of the principal of the loan, then the debt had been fully paid before the bankruptcy, and there was nothing due Larned for which he could hold the policies as security. It is claimed by this petitioning creditor that the excess of interest paid should be thus applied; that nothing was, in fact, due Larned; that the petition of the assignee and Larned's affidavit were, therefore, false, and the order entered thereon should be vacated.

On behalf of Larned it is claimed that the arrangement or compromise made was made in good faith between him and the assignee; that it was made at the solicitation of the assignee himself; that the assignee then knew all the facts now disclosed; that to apply the excess of interest, as now claimed, would be in effect enforcing the defence of usury agaist him by the assignee, when the assignee did not himself set it up, and that he had a right to waive it; that the only remedy of the creditors or the assignee was to bring a suit under the statute of New York for the excess of interest paid; and, at any rate, that the assignee would have had no right to recover by suit the excess of interest paid by the firm of John R. Hoole & Son, nor any right to go back of the time when that firm was dissolved, in applying the excess of interest to the liquidation of the principal; that the remedy of the creditors, if the assignee has been guilty of dereliction of duty in not setting up the usury, or in not collecting and redeeming the assets of the estate as he was bound to do, is to dispute the settlement of his accounts, charge him on account with what he has lost by his negligence, or sue him on his bond for neglect of duty. It appears that the assignee gave bond in the sum of $25,000, with Larned as his surety.

It is unquestionably shown by the evidence that the assignee, who, during all these transactions, was the bookkeeper of the bankrupt, knew of the usurious character of the loans, and was familiar with all the details of the transactions. It also appears that he first suggested the arrangement that was made about the surrender of the policies to Larned. The matter was in negotiation for some time. The

assignee urged the settlement upon Larned on the ground that he could, if he pleased, defend against Larned's claim on the ground of usury, to which Larned replied that he thought he could beat him. Finally, it was agreed to between them, and then application was made to the court to authorize it, as above stated.

Upon these facts, and upon the respective claims of the parties, I am clearly of opinion that the order should be vacated.

It is unnecessary to determine whether an assignee in bankruptcy is *bound* to set up usury as a defence to a claim made against the estate for the purpose of avoiding what is in other respects a valid and meritorious claim. That he may do so has frequently been decided. The only authority cited by the learned counsel for the respondent, for the proposition that an assignee for the benefit of creditors is not bound to do so, seems to be rather the suggestion of a doubt than a ruling to that effect of the learned court. *Beach* v. *Fulton Bank*, 3 Wend. 573. It would seem that the rights of creditors are fixed and determined by the law, and that the assignee appointed by the law to enforce them can hardly be vested with a discretion which, if it exists, is essentially arbitrary, to enforce them or not as he sees fit. But, be this as it may, this question is not involved in the present case. There is a clear distinction between availing one's self of a defence of usury to avoid a loan, and availing one's self of those equitable rules which are applied by the courts in the adjustment of a usurious loan which has not been paid, but still remains executory. The former has been sometimes denounced as harsh and inequitable; the latter can never be so considered. For an assignee to give up the benefit of those rules would be, in effect, applying the estate in payment of usury.

Whenever the parties to a usurious loan are obliged to resort to a court of equity for relief for the foreclosure of securities, or for their redemption, they are forced to submit to an equitable adjustment of the debt, which is held to be the payment of the loan with lawful interest. All payments of interest in excess of this are held to be under duress, and not

voluntary payments of interest, and they are applied in liquidation of the principal. *Tiffany* v. *Boatman's Institution*, 18 Wall. 375, 385; *Wheelock* v. *Lee*, 64 N. Y. 242, 245; *Beach* v. *Fulton Bank*, 3 Wend. 573, 585.

I think, also, it is clear that the whole series of notes in this case are all to be treated as renewals of the original loans. See *Nat. Bank* v. *Lewis*, 75 N. Y. 516. The parties have treated them as such. But, even if the respondent is right in his claim that no account can be taken of payments in excess of legal interest made by Hoole & Son, it makes no material difference as respects this motion; for, whether we go back to the first loan, in 1870, or only to the time of the death of John R. Hoole, Jr., the substantial fact remains, that, upon a proper and equitable statement of the account between the assignee and Larned, there was nothing due Larned in excess of the value of the security, and the debt was wholly, or, for the most part, paid, for which he held the policies in pledge, and the averments of the petition and affidavit, on which the order now sought to be vacated was made, were untrue.

It is wholly immaterial that there was no fraud as between Larned and the assignee. It is not sought to vacate the order on that ground. The power and duty of the court to vacate the order do not rest on proof of fraud, or even on the theory that the parties, or either of them, were guilty of any intended fraud or deceit upon the court. It rests upon this: that the order was procured by a material misrepresentation of facts to the court, and that if the real facts had been stated the court would not have made the order. Larned, even if wholly innocent of fraud, cannot now claim to hold on to the benefits of an order which he aided in procuring by a false representation of the facts. It is clear that if the facts now disclosed, and then known to the parties, had been made known to the court, the order would not have been made.

Upon the most favorable view of the case for Larned, it was a case of a doubtful or disputable claim, and one in which the power of the court to authorize a compromise might properly be invoked. The negotiation between the parties

shows that it was so treated by them, and mutual concessions were made, very slight on the part of the creditor and very large on the part of the assignee, to effect the settlement. Yet the court itself is restricted by the general orders, so that it cannot authorize the compounding of a claim without notice to creditors, (general order 17,) or at any rate cannot authorize a compromise except upon testimony, and upon a petition "*clearly and distinctly*" setting forth "*the subject-matter of the controversy, and the reasons why the assignee thinks it proper, and most for the interest of the creditors, that it should be settled.*" General order 20. Yet this assignee undertook to compromise this matter himself, which clearly he had no power to do, and then, to give an apparent sanction to the settlement already agreed to, he united with the creditor, to whose great advantage the settlement was made, in presenting the matter to the court, not as a matter in controversy or a disputed claim that was to be compounded and settled, but as a case of an unquestioned claim against the estate for which the creditor held securities of less value than the debt, which he offered to take in full satisfaction thereof. The case thus presented was a clear case for the granting of the order. The real case, which was concealed, was a case on which, according to the settled practice of the court, and under the general orders, it would have directed an inquiry by reference and notice to creditors.

The relation of the parties was such as to suggest the suspicion that this concealment of the real case from the court was an intended concealment, designed for the benefit of this creditor; but I have preferred to consider the case as free from intended fraud or deceit.

There is no question of the right of any creditor to make this application. He is interested in the distribution of the estate, and can apply to the court to have an order which, through mistake or fraud, has been improperly made, to the prejudice of the creditors, vacated and set aside. If he has been buying up claims against the bankrupt, or has a personal motive in prosecuting this proceeding other than his mere interest as a creditor, or is acting in concert with the

assignee, all of which is charged against him by Larned, I do not perceive that it is material, or in any way affects his right as a creditor to maintain this petition. Nor has there been any delay, laches, or acquiescence on the part of the creditors which Larned can avail himself of to defeat the petition. So far as appears, Larned has not altered his situation in reliance on the action of the court in any respect, and if he had I do not perceive that he can make that an objection, as he was a party to the misrepresentation by which the order was obtained.

The creditors are not limited to proceedings against the assignee in such a case; nor will the court remit them to a doubtful remedy by litigation against him, where it can in the bankruptcy proceeding itself, without prejudice to the rights of any party, set right the wrong he has done. The court will protect him against his own mistakes, which are injurious to the estate, where it can do so without injury to other persons. If the creditor Larned has any interest in or right to hold these policies, he will be at liberty to proceed in the mode prescribed by the statute to enforce his rights, but he cannot sustain those rights by an order improperly obtained. Whatever rights he has will not be prejudiced by the vacating of this order.

Order vacated, upon surrender by the assignee of the release executed by the creditor.