TIMBERLAKE *et al. v.* FIRST NAT. BANK.

*(Circuit Court, N. D. Mississippi, E. D.* April 25, 1890.)

1. USURY—WHAT CONSTITUTES—BANKS.
   Where drafts are from time to time deposited in a bank, some of them being payable on demand and some on time, an agreement between the bank and the depositor that credit shall be given for such drafts on the day after their deposit, the depositor being charged the full legal rate for any overdraft, does not constitute usury when such agreement is made in good faith in order to save involved calculations.

2. SAME—COMPOUND INTEREST.
   Charging a depositor, by agreement, at the end of each month, with interest at the full legal rate on his overdraft, and adding such charge to the overdraft, does not constitute usury.

3. SAME—DISCOUNT—NATIONAL BANK.
   Under Code Miss. 1880, which only allows interest on the amount of money actually lent, a national bank in that state cannot deduct interest in advance.

4. SAME—ACTION TO RECOVER BACK—PLEADING.
   In an action for the recovery of interest alleged to have been charged in excess of the legal rate for oral contracts, a plea setting up a written agreement to pay the interest charged, without denying that the charges alleged in the declaration were made before the written agreement was entered into, and without stating the date of the written contract, is bad.

5. SAME—PARTIES—NATIONAL BANK.
   Under Rev. St. U. S. § 5198, which empowers one paying illegal interest to a national bank to recover double the amount paid, one of the joint makers of a note on which illegal interest is charged cannot recover the penalty from the bank where the illegal interest was paid by the other maker.

At Law.

*Sullivan & Whitfield* and *Beall & McClelland,* for plaintiffs.
*Barry & Becket* and *Fox & Roane,* for defendant.

HILL, J. On the 1st day of September, 1887, the defendant was organized under the laws of the United States as a national bank, and the plaintiffs drew checks on the bank in payment of the cotton purchased by them, and deposited with defendant, in payment, drafts or checks on the parties to whom the cotton was sold or shipped. The declaration charges that defendant charged plaintiff with interest on the sums so checked out by them, less the interest on their deposits, at a greater rate of interest than that allowed by the laws of the state of Mississippi, the accounts being balanced at the end of each month, and interest charged on the balance found; that during said transaction the interest charged on such balances amounted to the sum of $5,174.72; that the rate of interest charged in said transaction was greater than the rate allowed by law. The second count in the declaration avers that the plaintiffs, together with T. C. King, negotiated a loan with the defendant for $10,000, to secure the payment of which they executed their two notes,—one for the sum of $5,000, payable in eight months after date; and the other for $5,000, payable in ten months after date,—each note to bear 10 per cent. interest per annum after due until paid; that 10 per cent. per annum interest from the date of the notes until the maturity thereof, amounting to the sum of $758.30, was retained by the defendant as such interest. The third count in the declaration further avers that on April 25, 1889, the defendants charged plaintiffs with $251.96, on a balance before that time due defendant, which charge embraced more interest than was then allowed by the laws of the state. The declaration further avers that all the interest so charged to the plaintiffs, and which was paid by them, embraced interest greater than was then allowed by the laws of the state of Mississippi, and was so knowingly charged, and was in violation of sections 5197, 5198, Rev. St. U. S., by which the whole interest so charged became forfeited; and that, the same having been paid, by the provisions of section 5198 an action has accrued to the plaintiff to have and recover of and from the defendant double the amount of said interest, to-wit, the sum of $12,547.70.

The first plea is the general issue. The second plea avers that on September, 23, 1887, the defendant had with the plaintiffs an agreement in writing, which provided that the plaintiffs should pay to the defendant 10 per cent. per annum on all overdrafts drawn on it, and that the plaintiffs' account with defendant was to be due at any time on demand with three days' notice. That during the time averred in the declaration the overdrafts were paid by drafts on Boston, Providence, Philadelphia, and other places, sometimes on demand drafts, sometimes on cash drafts, and sometimes on sight or time drafts, on which there were three days of grace allowed; and to equalize these drafts, and to save numerous calculations of interest, it was agreed that the plaintiffs should be credited with their drafts on the day succeeding the day on which they were drawn, which was to the advantage of plaintiffs. That the plaintiffs were charged with interest at the rate of 10 per cent. upon the sums checked and from the date of the payments, and credited with interest at the same rate for the proceeds of said drafts, thus adopting the commerical instead of the

statutory rule, which was to the advantage of the defendant; and that it was under this rule that the sum of $84.25 was charged for the month of September, the same not having been paid on the 1st of October, 1887, and was charged to plaintiffs in their account as principal, by their consent; and that in the same way the other interest was charged on their monthly settlements. That plaintiffs were furnished with a bank or pass book, in which all debits and credits, including the interest charges, were entered and accepted, and they promised to pay the same. The third plea, in substance, avers that two notes of $5,000 each were executed after banking hours had closed, and the proceeds were not placed to the credit of plaintiffs until the next day, and that the notes were not paid until the 25th of April, 1889; the amount paid on one being $5,088.10, and on the other, $5,002.76; and that in said transaction there was no intention to charge usury. The fourth plea avers that the interest on the overdrafts for September, 1888, was the sum of $40.25, which was added to the sum of $3,697.94, making the sum of $3,720.19, which plaintiffs promised to pay, but which was not paid until April 25, 1889; and that there was no purpose to evade the usury laws or the provisions of the statute. The fifth plea to the declaration in substance avers that T. C. King & Co., a firm composed of T. C. King, was, in September, 1888, a successor of Timberlake & Nance, and so continued until after April 25, 1889, and if any usury was paid as alleged it was paid by T. C. King & Co., and not by the plaintiffs, Timberlake & Nance.

The demurrer to the pleas sets out several grounds of demurrer, to-wit: (1) A general demurrer; (2) that neither of the pleas sets up a complete defense to the action; (3) that the second plea does not state the date of the agreement, how long to continue in force, and what overdrafts it included; (4) that the agreement set out in the second plea was void, and could not justify the taking of interest at 10 per cent. per annum. The fifth ground is also a general demurrer. Several grounds are insisted upon by plaintiffs' counsel in support of the demurrer, which will be considered in the following order:

*First.* It is insisted that the taking of 10 per cent. per annum interest, prior to October 1, 1887, in the absence of a written contract, was usurious, and avoided all interest in the dealings of the parties subsequent to that time. The national bank law is a law unto itself, which congress had the power to enact; and in express terms it allows the banks organized and doing business under its provisions to take and receive the highest rate of interest allowed by the state in which they are located and doing business. The rate of interest allowed by the law of this state is 6 per cent. per annum, but 10 per cent. per annum may be contracted for in writing. This may be in the note or other written contract, or in a separate paper governing or embracing their subsequent dealings, stated in the written agreement. The charging, taking, or receiving of more than 6 per cent. interest per annum, in the absence of such written agreement, if none, was a violation of the act of congress, and forfeited the interest due on the debt, and its being paid rendered the defendant liable to an action for double the amount of the interest

paid on the debt to the persons paying it, as the penalty for the violation of the law. Congress, in the act, did not adopt the state law on the question of usury further than to adopt the rate of interest allowed by the laws of the states; and 10 per cent. per annum is the highest rate of interest allowed by the statute of this state, when the contract is made in writing, and 6 per cent. when it is not; so that the question is: Was there more than 6 per cent. paid when there was no contract in writing, or than 10 per cent. when there was? To subject the defendant to the penalty there must have been paid not only a larger rate of interest than that allowed by law, but that larger rate knowingly received; that is, the officers of the bank must, at the time they received the money, have known that the amount was in excess of the interest allowed by law.

The *second* plea alleges that the checks or drafts received by the bank in payment should be credited on the day succeeding the day on which they were drawn; that some of them were cash or demand drafts, and some were sight or time drafts, on which three days were allowed; that this was done to equalize the same, and to save the numerous calculations, and not for the purpose of obtaining any additional interest; that the plaintiffs were charged with interest on the payments made on the checks drawn by them on the defendant at the rate of 10 per cent. on the drafts or checks received in payment as above stated, thus adopting the commercial instead of the statutory rule. The plea alleges that the mode above stated was to the advantage of the plaintiffs; that the interest was calculated according to the commercial rule allowing 360 days to the year or 30 days to the month, which was to the advantage of the defendants; that this mode was adopted for convenience, and to save numerous calculations of interest, and not to receive more than the legal rate of interest. I am satisfied that the parties had a right to agree as to the time the credits should be made, and, if done without objection at the time, the agreement will be presumed; and, if made in good faith to equalize the interest, and not for the purpose of receiving a greater rate of interest than that allowed by law, that any difference in the result, one way or the other, will not be a violation of the law, or subject the defendant to its penalty. Therefore this ground of demurrer is not well taken. It is insisted on the part of the plaintiffs that the mode of keeping the accounts and balancing them at the end of each month, and charging the balance to the plaintiffs, including interest, as set out in the second plea, was compounding the interest. The plea avers that the interest for each preceding month was so much, stating the sum, and that by consent of the plaintiffs it was, on a certain day of each month, charged as principal, and so on during the continuance of the business. But it does not state whether this was the balance of interest on both the debit and the credit sides of the account, or only the interest on the advances made by the defendant's bank. When not frequent, the interest may by agreement between the parties be added to the principal debt, and thus the interest become part of the principal, and not be a compounding of the interest. On the other

hand, when the transactions are very frequent, they may be held as a compounding of the interest. But I am in doubt whether the transacactions in this cause, as shown by the accounts of the bank, shall be held as a compounding of the interest; but, as the statute under which the penalty is claimed is quite penal in its character, the doubt will be resolved in favor of the validity of the transactions, so that the defendant will not be subjected to the penalty provided in the statute. The second plea does not deny that 10 per cent. interest was charged upon the advances made before the written agreement was entered into, and does not distinctly state the date of the written contract, and for this reason the demurrer to the plea must be sustained.

The *third* plea admits that the sum of $758.30 was retained by it out of the two notes of $5,000 each at the time the same were discounted, and that the balance of the amount of the two notes, being $9,241.70, was then paid to the plaintiffs. The Code of 1880 of this state only allows interest on the amount of money actually loaned, and does not allow it retained in advance, as is provided in the national bank law, where no rate of interest is fixed by the state statute. It follows that under the law of the state only 10 per cent. interest could be charged upon the amount actually advanced, and that the interest on the amount retained until the maturity of the notes was that much over and above the 10 per centum interest on the money loaned, and a violation of section 5197, and subjects the defendants to the penalty prescribed in section 5198, Rev. St. U. S. The statute also forfeits all the subsequent interest on the notes, which is added to the penalty.

The defense set up in the *fourth* plea is governed by the same rules stated in relation to the second plea, and, if proven, is a valid defense to the action so far as it relates to the matter set up in the plea.

The *fifth* plea alleges that T. C. King & Co. were the successors of Timberlake & Nance, and that whatever amount of interest was paid, if any, over and above the interest allowed by law, was paid by T. C. King & Co., who alone are entitled to recover the penalty therefor. Section 5198 confers the right to recover the penalty to the party paying it, or to his legal representatives, so that this plea sets up a valid defense to this action if sustained by the proof.

The result is that the demurrer to the second and third pleas must be sustained, and to the fourth and fifth pleas must be overruled, with leave to plead over.

The questions as presented in this cause have been ably argued by the learned counsel on both sides, and numerous authorities read and commented upon; but the view of the question as presented to my mind depends upon the proper construction to be put upon the sections of the Revised Statutes of the United States referred to, and a few general and well-recognized rules, rendering citations to authority unnecessary.