LOUISVILLE TRUST CO. v. KENTUCKY NAT. BANK et al.

(Circuit Court, D. Kentucky. March 21, 1898.)

1. USURY PAID TO NATIONAL BANKS—RECOVERY—ASSIGNEE FOR CREDITORS.
    An assignee for the benefit of creditors under the Kentucky statutes, who, in order to get possession of collaterals, pays to a national bank a note of his assignor, which includes usurious interest, may maintain an action to recover it back, under Rev. St. § 5198. The assignee is the assignor's "legal representative" in the meaning of that section.

2. LIMITATION OF ACTIONS—USURY—RENEWAL NOTES.
    Usurious interest on a note is not paid, so as to set running the statute of limitations against an action to recover it back, by giving a renewal note which includes the interest. The statute only begins to run from the time the renewal note is paid.

3. USURY—AMOUNT OF RECOVERY.
    Under Rev. St. § 5198, which provides that one paying usurious interest to a national bank may recover back twice the amount of the interest thus paid, it seems that the recovery allowed is twice the amount of the entire interest, and not merely of the excess over the legal rate.

Helm & Bruce, for plaintiff.
Humphrey & Davie, for defendants.

BARR, District Judge. This is a suit brought by the Louisville Trust Company, as general assignee of Thomas & Son, to recover from the Kentucky National Bank usury which is alleged to have been paid that bank. It appears from the allegations of the petition that Thomas & Son, who were large whisky dealers in the city of Louisville, on April 18, 1894, made a general assignment to the plaintiff, the trust company, for the benefit of their creditors, assigning and transferring to it all of their property of every description, choses in action, etc., except such property as is exempt from execution by the laws of the state of Kentucky. The petition sets out various loans made by the Kentucky National Bank to Thomas & Son, for which they executed their notes, and, as they matured, renewed them; sometimes increasing the amount by additional borrowings, and at other times renewing for the same amount less the discount, and at

other times paying something and renewing the balance. The renewed obligations were unpaid at the time of the assignment, in April, 1894, and, as the bank held a large amount of collateral, alleged to be twice as much in value as the debt for which it was pledged, the trust company paid to the bank several debts, and received the collateral. These payments were made a few days after the deed of assignment, to prevent a sacrifice of the collateral, as the bank threatened to sell the same on the board of trade; and the plaintiff, as assignee, seeks to recover double the amount of interest on the several notes which were given by Thomas & Son, and paid by the plaintiff as assignee. The suit was filed December 13, 1895, and within two years of the time the trust company paid the several debts. The demurrer, which is to each paragraph of the petition, is, because—First, there is no cause of action in favor of the plaintiff, the Louisville Trust Company; and, second, because the petition seeks to recover double penalty for the alleged payment of usury, made more than .two years before the bringing of the suit.

Counsel for the defendant has filed a most elaborate brief, in which he presents quite a number of questions, some of which are not raised by the demurrer. The national banking act (section 5197) provides that:

"Any association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the state * * * where the bank is located and no more, except that where by the laws of any state a different rate is limited for banks of issue organized under the laws of the state the rate so limited shall be allowed for associations organized or existing in any such state under this title. When no rate is fixed by the laws of the state, * * * the bank may take, receive, reserve, or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days from which the note. bill or other evidence of debt, has to run:"

And by section 5198 it is provided that:

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In · case the greater rate of interest has been paid the person by whom it has been paid, or his legal representative, may recover, back, in any action in the nature of an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same, provided such action is commenced within two years ,from the time the usurious transaction occurred."

The petition, as originally brought, included in paragraphs 2 and 3 a claim for usury for debts which had been paid in full before the deed of assignment was made to the plaintiff; but that has been stricken out on motion of the plaintiff, and all of the remaining paragraphs set up claims for usury on debts which were finally paid by the plaintiff as the general assignee of Thomas & Son. It is claimed that the plaintiff has no right of action, because it was not the original borrower, and is not the legal representative of Thomas & Son, within the meaning of the statute. Authorities are cited to sustain the general proposition that assignees under the state law cannot sue and recover usury which has been paid by their assignors, as in such cases they are not the legal representatives of the bor-

rowers who have paid the usury. The contention is that the legal representative must mean an executor or administrator of a deceased party who would be entitled to recover the usury. This contention makes it necessary for us to examine somewhat into the legal right and duty of a general assignee under the laws of the state of Kentucky. The Kentucky law requires that voluntary assignments of a debtor in trust for his creditors shall be for the benefit of all his creditors in proportion to their debts and claims, and prohibits any preference given by a person insolvent or in contemplation of insolvency, under penalty that such preferential transfer and assignment shall transfer and assign all of the debtor's property for the benefit of his creditors, to be equally distributed, except that certain named fiduciary claims are given preference. A general assignee is given the right, and it is made his duty, to institute proceedings to set aside a preferential or fraudulent transfer, conveyance, or gift, of the assignor's property, or that of a fraudulent purchase of property in the name of another person. Therefore an assignee under a general assignment is in the nature of a general liquidator of the estate of the debtor, and as such, we think, the plaintiff had a right, and it was its duty, if the estate of Thomas & Son required it, to pay these debts to the defendant the Kentucky National Bank, and thus get control of the collateral held by the bank, and save it from being sacrificed. The relations, by the Kentucky law, of a general assignee to an insolvent debtor, are very like those of an administrator to his decedent, in that it is the duty of both to collect, care for, and distribute, the estate of the insolvent in the one case and the personal estate of the decedent in the other. In the one case, if there is any of the estate left after the payment of the debts and the expenses of of the administration, it goes to the insolvent, and in the other case to the heirs and distributees of the decedent. By the provisions of the Kentucky statute, "personal representative" means executor or administrator or other person appointed to take charge of the estate of a deceased person, and "real representative" means the heir or devisee of real property of a deceased person. These definitions are in the Kentucky Code. The federal statute does not use the words "personal representative," but "legal representative." It seems to us, considering the rights and duties incumbent upon plaintiff as general assignee of Thomas & Son, it was, in making these several payments, the legal representatives of the assignors, who were the original borrowers.

It seems to be conceded by learned counsel that the plaintiff is entitled to recover because of the greater rate of interest paid by it upon the paper taken up by it; but, if we are correct in concluding that the plaintiff, in paying these debts, was the legal representative of Thomas & Son, then if these final payments are to be considered in law as the payment of the usury which had been taken in the previous renewals, the plaintiff is entitled to recover, because he is the person who paid the greater rate of interest than that permitted by the federal statute. This view, of course, does not assume that the deed of assignment transferred to the plaintiff the right to recover this double interest, which right had already

87 F.—10

accrued to Thomas & Son; but merely that the deed of assignment gave to the plaintiff the right, and made it its duty, to pay these bank debts, under the circumstances; and in thus paying the debts the right to recover the double interest accrued and became perfect. The plaintiff is, therefore, not to be considered as merely a creditor or the representative of creditors of Thomas & Son, who is seeking to recover interest which had accrued to them, but the person who has paid the greater interest. But if we assume that the payments of the plaintiff, as assignee of Thomas & Son, of these debts, were the payments of Thomas & Son, and that thereby the right to recover accrued, still we think that the general assignee in Kentucky is a "legal representative" within the meaning of the federal statute, and entitled to recover. A brief review of several of the cases, we think, will sustain this view. It is impossible, in a brief opinion, to review all the cases referred to by learned counsel on this subject, but I will consider several that he refers to as decisive of this question. Thus the two cases decided by Judges Emmons and Swing, of Barnett v. Bank (decided in 1876), and reported in Fed. Cas. Nos. 1,026 and 1,034. The facts in these cases are not fully given, but the case No. 1,026 was taken to the supreme court, and was reported in 98 U. S. 555. It appears from that report that the usury which was sought to be recovered below was usury which had been paid by the insolvent debtors, Barnett & Whitesides, long before the assignment; and it is notable that, while the supreme court affirmed the case, they put it upon an entirely different ground from that of the trial judges, viz. that the usury could not be pleaded as a set-off to a suit, but that the recovery must be by a separate and distinct action, that being the only remedy given by the statute; and did not touch upon the question at all of whether or not the assignee could sue and recover. It appears from the statement of the case in the supreme court that the defendant assignee of Barnett & Whitesides set up that a bill which was sued upon contained illegal interest,—not only the bill itself, but the renewals thereof,—and claimed to have that usury applied to the payment of the bill sued on; and that plea was not demurred to, and was allowed by the trial court, and no error complained of therefor in the supreme court, showing that the assignee of the general assignment was allowed to so far represent the assignor. These cases, we think, are not in point in the present case, except that they show that the assignees could defend, under the statute against usury, when sued for the debt of the assignor. In the case of Osborn v. Bank, 175 Pa. St. 494, 34 Atl. 858, it was held that an assignee in the state of Pennsylvania was not entitled to sue for usury, and this was because of the local law, which defines "legal representative" as meaning executor or administrator, and it was held that under that law such an assignee was not a legal representative within the meaning of the federal statute. The court said (175 Pa. St. 498, 34 Atl. 859):

"It is true, if the subject-matter or the context shows that the words are used in a different sense, whether in statute or a contract, the courts will give them the meaning intended. Thus they may mean next of kin (Ralston v.

Waln, 44 Pa. St. 279), or, if land be the subject, they may be construed to refer to heirs, devisees, or aliences (Duncan v. Walker, 2 Dall. 205; Ware v. Fisher, 2 Yeates, 578; Cochran v. Cochran, 127 Pa. St. 486, 17 Atl. 981)."

The court said in another part of the opinion:

"This decision is not necessarily in conflict with Bank v. Overholt, 96 Pa. St. 327, as it was there held that the right of action passed to an assignee in bankruptcy. This officer, like the receiver, as already said, derives his power from the statute and the decrees appointing him, and stands on a different footing from a voluntary assignee for the benefit of creditors."

We have against this view the case of Tiffany v. Bank, 18 Wall. 409, in which Tiffany, trustee, was allowed to sue, or at least in which no objection was made, and the court disposed of the case thus brought upon its merits, thus assuming that he could legally bring it. In the case of Wright v. Bank, reported in Fed. Cas. No. 18,078, Judge Gresham sustained the right of an assignee in bankruptcy to sue for usury paid by the assignor. In the case of In re Prescott, 5 Biss. 523, Fed. Cas. No. 11,389, an assignee in bankruptcy was allowed to defend, and have the usury under this statute in a claim presented against the bankrupt, stricken out. In the case of Bank v. Alves, 91 Ky. 146, 15 S. W. 132, the Kentucky court of appeals decided that an assignee under a deed of trust for the benefit of creditors was a "legal representative" within the meaning of the federal statute. In Re Hoole, 3 Fed. 496, Judge Choate allowed an assignee in bankruptcy to get the benefit of money paid by the bankrupt, and thus discharge a claim set up against the estate. Danforth v. Bank, 1 C. C. A. 62, 48 Fed. 271, decides that usury charged by a national bank destroys the interest bearing power of the note or bill. The reasoning of the court in Timberlake v. Bank, 43 Fed. 235, would rather tend to the conclusion that Thomas & Son could not sue for the usury paid by plaintiff, instead of proving plaintiff could not as claimed by counsel. But, whatever may be the rights of an assignee, either in bankruptcy, or a general assignee to recover usury under this statute, which had been paid (before the assignment or before the bankruptcy), and had been a concluded transaction, we think that there can be no serious doubt that plaintiff was the legal representative of Thomas & Son, and as such made the various payments of the debts under the circumstances detailed; and that fact, whether you consider the plaintiff as paying the usury, or whether you consider it merely as the legal representative of Thomas & Son, it seems to me gives it the right of action.

The next inquiry is whether or not several of the sums which are sought to be recovered are within two years from the time when the usurious transactions occurred. The case of Brown v. Bank (decided by the supreme court, Feb. 21, 1898) 18 Sup. Ct. 390, though not distinctly on this question, we think throws much light upon it. That case, as we understand, was a case which arose under the provisions of the law, where it was sought to have the entire interest on a note forfeited, because a greater rate of interest than allowed by law had been agreed to be paid thereon. The court of appeals of Kentucky held that only the interest on the last note

should be forfeited, and not the interest which had accrued upon notes for which the existing note had been a renewal. This was based upon the court's construction of the language of the act, which is, "Taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon." The case was returned to the trial court, and, although this construction of the statute had been subsequently reversed by the same court, still the trial court concluded that they were bound in that case by the court of appeals' decision, and the case went a second time to the court of appeals, and was there affirmed, and from there went to the supreme court of the United States. The opinion, delivered by Justice Harlan, is a brief one. The court says:

"If a bank which violates that section [5198] sues upon the note, bill, or other evidence of debt held by it, the debtor may insist that the entire interest, legal and usurious, included in his written obligation, and agreed to be paid, but which has not been actually paid, shall be either credited on the note or eliminated from it, and judgment given only for the original principal debt, with interest at the legal rate from the commencement of the suit. We say 'entire interest' because such are the words of the statute, based on the act of June 30, 1864, * * * whereas the prior statute of February 25, 1863, * * * declared that the knowingly taking, reserving, or charging a greater rate of interest than was allowed should be held and adjudged a forfeiture of the debtor's demand on which usurious interest was taken, reserved, or charged. The forfeiture declared by the statute is not waived or avoided by giving a separate note for the interest, or by giving a renewal note in which is included the usurious interest. No matter how many renewals may have been made, if the bank has charged a greater rate of interest than the law allows, it must, if the forfeiture clause of the statute be relied upon, and the matters thus brought to the attention of the court, lose the entire interest which the note carries, or which has been agreed to be paid. By no other construction of the statute can effect be given to the clause forfeiting the entire interest which the note or other evidence of debt carries, or which are agreed to be paid, but which has not been actually paid. It is said that within the meaning of the statute interest is 'paid' when included in a renewal note, and when suit is brought upon the last note calling for interest from its date only the interest accruing on the apparent principal of that note is subject to forfeiture. We think that the statute cannot be so construed. If, within the meaning of the statute, interest is paid simply by including it in a renewal note, it would follow that, as soon as usurious interest is included in a renewal note, the borrower or obligor could sue the lender or obligee, and 'recover back * * * twice the amount of the interest thus paid,' when he had not in fact paid the debt, nor any part of the interest, as such. This cannot be a sound interpretation of the statute. The words 'in case the greater rate of interest has been paid,' in section 5198, refer to interest actually paid, as distinguished from interest included in the note, and only 'agreed to be paid.' If, for instance, one executes his note to a national bank for a named sum as evidence of a loan to him of that amount, to be paid in one year at ten per cent. interest, such a rate of interest being illegal, and if renewal notes were executed each year for five successive years without any money being in fact paid by the borrower, each renewal note including past interest, legal or usurious, the sum included in the last note in excess of the sum originally loaned would be interest which that note carried which was agreed to be paid, and not, as to any part of it, interest paid." And again: "If the note, when sued on, includes usurious interest agreed to be paid, the holder may in due time elect to remit such interest, and it cannot then be said that usurious interest was paid to him. McBroom v. Investment Co., 153 U. S. 318, 328, 14 Sup. Ct. 852; Stevens v. Lincoln, 7 Metc. (Mass.) 525; Saunders v. Lambert, 7 Gray, 484, 486; Stedman v. Bland, 26 N. C. 296, 299."

The court also refers to the case of Sydner v. Bank, 94 Ky. 231, 21 S. W. 1050, and quotes from it approvingly the quotation used by the Kentucky court from the case of Bank v. Hoagland, 7 Fed. 159, in which it was held that a forfeiture was not waived by giving subsequent notes, though in respect to them the agreed rate of interest was a legal rate. The case of McBroom v. Investment Co., 153 U. S. 318, 14 Sup. Ct. 852, is, we think, quite in point, and, taken with the reasoning of the court in the case of Brown v. Bank, is decisive of this question.

The remaining question which is argued by counsel is whether or not the recovery shall be double the amount of the interest paid or only double the amount of the usury paid. This question is not raised by the demurrer, and could not be raised, unless it would leave the amount less than the jurisdictional sum. Still, it has been argued by counsel very elaborately, and we should, perhaps, indicate our view upon it. We think the case of Brown v. Bank, read with the case of McBroom, is also decisive of this question, because it would be a most extraordinary construction of this statute to allow a forfeiture of all of the interest, not only of the remaining note, but all of the interest which accrued on previous renewals, when usury had not been paid, but only allow double the usury (double the amount of the excess of interest) to be recovered when the usury and the debt had actually been paid. It is quite evident from the entire section that the penalty is to be greater when the creditor has actually required the usury, and received it, than when it was merely agreed to be paid in the obligation, though not paid. The language of the section, fairly construed, we think makes it clear that the recovery should be double the amount of the interest, and not only the excess of the interest paid. We do not think it necessary to review the authorities upon this subject, but will refer to the following: Hill v. Bank, 15 Fed. 432; Bank v. Davis, 8 Biss. 100, Fed. Cas. No. 10,038; Bank v. Moore, 2 Bond, 175, Fed. Cas. No. 10,041; Crocker v. Bank, 4 Dill. 358, Fed. Cas. No. 3,397. The demurrer, therefore, should be overruled, and it is so ordered.